## SEAWARD *v.* MALOTTE *et al.*

On appeal, the Supreme Court notices only the errors committed against the appellant, not those committed against the successful party.

Where a Mexican grant refers, in its description of the premises, to the plat or map accompanying the expediente, the plat or map becomes, for the purpose of identifying the land, as much a part of the grant itself, as if incorporated therein.

A tract of land was held by several tenants in common, and on partition, a certain portion was set apart and quit-claimed to plaintiff, representing M., who had conveyed to plaintiff as security for indorsements. Another portion of the land was set apart and quit-claimed to H. The portion thus received by H. was subsequently conveyed to plaintiff, and embraces the land in controversy. *Held*, that plaintiff is not mortgagee of the premises ; that even if he held the premises conveyed by H. to him as security for the indorsements of M., it was as trustee of the legal title ; that the title had passed from H., and had never been in M., except of an undivided interest before the partition, and was, therefore, in plaintiff, who could maintain ejectment.

Questions arising on a trial as to proper parties plaintiff, as to the validity and effect of a Mexican grant from which plaintiff deraigned title, as to its loss and contents, and as to the validity and effect of the mesne conveyances through which plaintiff claimed, and as to whether the proceedings in the Probate Court showed jurisdiction in said Court to make orders, by virtue of which sales were had, resulting in deeds, through which plaintiff in part claimed, were matters for the Court alone, and not for the jury.

It is error for the Court to instruct the jury that before the plaintiff can recover, the evidence must specifically fix and establish the eastern boundary line of the grant under which plaintiff claimed, when it appears from the evidence that the land in controversy is within that boundary line. The precise location of the line is of no moment.

A lot may be shown to be within a city, without proof of the precise location of one of its boundary lines.

Seaward *v.* Malotte.

APPEAL from the Tenth District.

The land in suit is a small portion of a large tract, embracing 1,300 acres. The owners of this tract, at a certain time, by sundry mesne conveyances from Sutter, were six persons, of whom plaintiff and one Hedges were two—the former deriving his title from one Mott, and holding it as security for indorsements. These parties held as tenants in common. On partition, each party received from the others a quit-claim deed for his share. The land in controversy fell to Hedges, and was accordingly deeded to him. He, a month afterward, conveyed to plaintiff. The portion of Mott was also deeded to plaintiff.

On the trial, defendants called plaintiff as a witness, and he testified that he had no interest in the land in controversy, and had none at the commencement of the suit; that one Mott was the real party in interest, though he had deeded the land to him, plaintiff, as security for indorsements—Mott at the same time holding from plaintiff a power of attorney to sell the land, with a verbal agreement, that as money was derived from such sales it should be applied on the notes of Mott indorsed by plaintiff—and that all the notes were paid but one.

In point of fact, plaintiff was mistaken in saying that Mott had deeded the land in controversy to him, plaintiff, as he derived this particular portion from Hedges, and not from Mott; and this is the confusion of ideas to which the opinion of this Court refers.

Plaintiff offered in evidence the petitions, orders and proceedings of the Probate Court in relation to the estates of Sampson and Buchanan, the object being to trace title from the estates, through the partition deeds above named. Defendants objected to the evidence, on the ground, mainly, that the petitions, orders, and proceedings did not show on their face that the Probate Court had jurisdiction to make the orders; that, as to a decree of distribution, it did not appear who were the heirs; that no property was specified, etc. Objections overruled, defendants excepting.

*Reardan & Smith,* for Appellant.

I. The charge of the Court that plaintiff was a mere mortgagee of the land, and could not recover, was wrong, because Mott never had any interest in this particular piece of land. The land deeded to plaintiff, as representing Mott in the partition, is not this land. This land was bought by plaintiff of Hedges, and is the share of the lat-

ter under the partition. Hedges was unaffected by any parol agreement between Mott and plaintiff, and having the legal title, conveyed it to plaintiff.

II. The Court erred in submitting to the jury testimony to show that plaintiff was not the proper party to bring the suit.

III. The Court erred in instructing the jury that before plaintiff could recover, he must specifically fix and establish the eastern boundary line of the Sutter grant.

*Z. Montgomery*, for Respondents.

I. Plaintiff was only mortgagee, and hence could not recover. (Wood's Dig. 201, sec. 260.)

II. It is not shown that the land in controversy is within the grant; the boundaries of the grant are not shown, and it is uncertain and insufficient in its description of the land granted.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and BALDWIN, J. concurring.

This is an action of ejectment, to recover the possession of a tract of land situated in Yuba county, south of the Yuba river, and opposite the city of Marysville. The plaintiff deraigns his title from a grant issued to John A. Sutter, in June, 1841, by the then Mexican Governor of California. The evidence given on the trial established beyond reasonable question the former existence of the grant, its destruction by fire in Sacramento, in 1851, and the correctness, as a copy of the same, of the document produced. In the description of the premises, the grant refers to the plat or map accompanying the expediente, which thus becomes, for the purpose of identifying the land, as much a part of the grant itself, as if incorporated into it. (*Ferris* v. *Coover*, 10 Cal. 622; *Davis* v. *Ramsford*, 17 Mass. 207; *Proprietors of the Kennebec Purchase* v. *Tiffany*, 1 Greenl. 220; *Thomas* v. *Hatch*, 3 Sum. 170; 2 Hilliard, 348.) This map was destroyed with the grant, but the evidence introduced clearly proved that it embraced lands lying east of Feather river, including the premises in controversy, and that as early as 1843 and 1844, several settlements were made by Sutter thereon. The verdict was so palpably against this evidence, that it should have been set aside without hesitation.

Several objections, it is true, were taken to the evidence thus offered, but as they were overruled, we do not notice them. The defendants are not the appellants, and had the ruling been otherwise, it is possible

Seaward *v.* Malotte.

that other evidence might have been offered.    It is not errors committed against the successful party which we notice on appeal, but those committed against the party complaining.    For the same reason, we do not consider the ruling on the motion for a non-suit.    We do not, however, intend to intimate that the ruling either upon the evidence or motion was in any respect erroneous.

The plaintiff was the proper party to institute the suit.    He was not mortgagee of the premises.    There appears to have been some confusion of ideas in this respect on the trial.    The deed from Mott to the plaintiff, which was taken as security against a contingent liability as indorser of certain notes, was only of an undivided interest in a certain tract.    This tract was held by several tenants in common, and on a partition, a certain portion was set apart and quit-claimed to the plaintiff—representing Mott—and another portion was set apart and quit-claimed to Hedges.    The portion thus received by Hedges was subsequently conveyed to the plaintiff, and embraces the premises in controversy.    If the plaintiff also held these premises as security for the indorsements of Mott, of which there is no evidence, it was as trustee with the legal title, and not as mortgagee.    The title had passed from Hedges, and it never had been in Mott, except of an undivided interest previous to the partition.    It was, therefore, in Seaward.

All the questions arising upon the trial, as to the proper parties plaintiff, and as to the validity and effect of the grant to Sutter, and as to its loss and contents, and as to the validity and effect of the subsequent conveyances, and the proceedings in the Probate Court, were matters for the determination of the Court alone, and were not subjects for consideration by the jury.    Upon the evidence in the record, the only question to be left to the jury was, whether the premises in controversy were embraced within the grant as explained by the map—or the evidence as to the map—the map being destroyed; and upon this question the verdict could only have been one way.    The instruction that before the plaintiff could recover, the evidence must specifically fix and establish the eastern boundary, was clearly erroneous.    The precise location of the boundary line was of no moment; it was sufficient if the land in controversy were within it.    The latter fact was clearly shown, and yet it might have been difficult, if not impossible, without a survey, to fix the exact position of the eastern line.    A lot may be shown to be within a city, without proof of the precise location of one of its boundary lines.

Judgment reversed, and cause remanded for a new trial.