[Civ. No. 5221.  First Appellate District, Division Two.—August 26, 1925.]

# SUN-MAID RAISIN GROWERS OF CALIFORNIA (a Corporation), Respondent, v. PETER PAPAZIAN, Appellant.

[1] CLAIM AND DELIVERY—CONTRACTS—CONSENT—DURESS AND COERCION—EVIDENCE.—In this action in claim and delivery, involving the right to the possession of certain raisins produced on defendant's land, in which plaintiff relied upon a contract entered into between defendant and plaintiff's assignor, and in which defendant relied upon the defense that his signature to said contract was obtained through menace and coercion, the evidence showed that said contract was signed under such conditions of duress and menace as to destroy the element of free and mutual consent which is essential to all contracts of that nature.

[2] ID.—MENACE—DURESS—CONNIVANCE OF INTERESTED PARTY—RESCISSION.—In such action, the menace upon which defendant relied brought the case squarely within the definition of that term found in section 1570 of the Civil Code, "of unlawful and violent injury to the person or property"; and the responsibility of plaintiff was covered by that portion of section 1689 of the Civil Code which authorizes the rescission of a contract when the consent was obtained by duress, menace, etc., "exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party."

[3] ID.—MENACE — KNOWLEDGE OF ASSOCIATION — RESPONSIBILITY FOR ACTS OF MEMBERS.—In such action, as the evidence of menace under which the contract was signed by defendant was wholly uncontroverted and as plaintiff's assignor, a mutual association of the raisin-growers of the locality, had full knowledge of the unlawful acts which were practiced by some of its members, or at least by those "jointly interested," the responsibility of the association for these acts was definitely fixed under section 1689 of the Civil Code.

[4] ID.—ABSENCE OF FINDING — APPEAL — EVIDENCE — ASSUMPTION.— Where the trial court has not made a finding on a given issue, the appellate court will not assume that the trial court would have made a finding contrary to all the competent evidence before it.

---

2.  Validity of contracts made under duress or menace, notes, 26 L. R. A. 51; 6 L. R. A. 493.  See, also, 6 Cal. Jur. 66.

4.  See 2 Cal. Jur. 870.

[5] Id.—Pleading—Issues Made During Trial—Findings—Reversible Error.—Plaintiff having pleaded a cause of action in replevin, and defendant having entered a denial and pleaded affirmatively his right to possession, and on the trial plaintiff having presented a contract purporting to place the right of possession in it, but this evidence having been met by a showing constituting coercion in the execution of said contract, the trial court should have been asked to and should have made a finding on the issues thus brought forward by the parties during the course of the trial and which were material to the main issue raised by the written pleadings; and the failure of the trial court to make a finding on that material issue constituted reversible error.

[6] Id.—Uncontradicted Evidence—Proof of Fact.—The uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact.

(1) 2 C. J., p. 992, n. 56 New.    (2) 2 C. J., p. 992, n. 56 New. (3) 2 C. J., p. 992, n. 56 New.    (4) 4 C. J., p. 776, n. 50.    (5) 4 C. J., p. 1059, n. 99.    (6) 23 C. J., p. 47, n. 30, 31.

APPEAL from a judgment of the Superior Court of Fresno County. S. L. Strother, Judge. Reversed.

The facts are stated in the opinion of the court.

J. K. Tuttle, Edward F. Treadwell and R. S. Laughlin for Appellant. -

Harry M. Creech and Harris, Johnson, Willey & Griffith for Respondent.

NOURSE, J.—Plaintiff commenced this action in claim and delivery. The cause was tried by the court sitting without a jury and judgment went to the plaintiff, from which the defendant has appealed on a record prepared under section 953a, Code of Civil Procedure.

The suit involves the right to the possession of about 75 tons of raisins produced on the defendant's land in the county of Fresno during the year 1923. Plaintiff's claim rests on an assignment from the Sun-maid Raisin Growers Association of a written contract executed by its assignor and

5.  See 24 Cal. Jur. 940.
6.  Disregarding uncontradicted testimony, notes, 4 Ann. Cas. 985; 12 Ann. Cas. 245. See, also, 10 Cal. Jur. 245; 10 R. C. L. 1006.

the defendant for the disposition of all the raisins or raisin grapes produced by the defendant for a specified period upon a certain described piece of property.   The complaint is in the usual form in claim and delivery and alleges that the value of the raisins which the defendant holds in his possession was about $6,000.   The answer is in the usual form denying plaintiff's ownership or right to the possession of the raisins.   With the issues so framed the plaintiff rested its case upon proof of the execution and assignment of the contract and of defendant's refusal to relinquish possession of the raisins.   Thereupon the defendant moved for a nonsuit upon the ground that the contract under which plaintiff claimed was in fact a contract of agency and not a contract of sale, but upon the suggestion of the trial court it was agreed that this motion should be held in abeyance until defendant's case was closed.   Defendant's case consisted of proof of his rescission of the contract upon the ground that his signature thereto had been secured by menace and coercion and that his refusal to deliver possession of the raisins under the contract was justified because the contract, having been executed through menace and coercion, was void and did not confer upon the plaintiff any right to the possession of the property.   As the complaint did not plead the contract or set forth any right of the plaintiff under it the defense of menace and coercion was not specially pleaded and accordingly no finding was made thereon.   However, the whole case was tried upon the theory that the two issues were before the court: First, whether the contract was one of sale or one of agency only, and, second, whether the contract was void because it had been signed under menace and duress.   [1]   On this appeal the main point urged by the defendant is that the evidence conclusively shows without contradiction that defendant's signature to the contract was obtained through menace and coercion, and as we are satisfied that the judgment must be reversed for that reason it is not necessary to consider the other grounds urged by the defendant.

The Sun-Maid Raisin Growers Association was a mutual association organized under the laws of this state by the raisin-growers of the section, having its headquarters in the county of Fresno, for the purpose of controlling the output

and marketing of raisins and raisin-grapes produced in that locality. In aid of this purpose, and for the further purpose of avoiding competition in the marketing of raisins, the association publicly announced some time in the spring of 1923 that it would not operate for that season unless at least ninety per cent of the growers of the locality joined with the association through the execution of growers' contracts similar to the one in suit. To secure these contracts a concerted "drive" was instituted by the officers of the association through the aid of committees and captains of groups of solicitors. The drive was begun about the first of April, 1923, and the association announced that it would end on April 29th of that year. The required number of signatures not having been secured at that time the period of the drive was therefore extended to May 5th. In fairness to the officers of this association it should be said that so far as this record discloses no one of them was directly engaged in any of the unlawful acts hereinafter related, but, on the other hand, it must also be said that these unlawful acts were specifically brought to their knowledge; that they used the threat of a repetition of such acts in their campaign to "persuade" other growers to sign with the association, and that they and the association profited by these acts. All the evidence on the issue of menace and coercion stands in the record uncontradicted; some of it comes from the testimony of witnesses called by the plaintiff; but in no case did the plaintiff attempt to controvert any of this showing except through the testimony of one officer of the association who stated that he personally had not used any threats for the purpose of securing defendant's signature. The defendant, Peter Papazian, testified that he had lived in Fresno County fifteen years and in the United States about twenty-nine years. He occupied the premises involved in the contract in suit with his wife and children during the year 1923, and upon this property raised a large quantity of raisin-grapes. The so-called drive for signatures to contracts with the Growers Association, which had commenced on April 1, 1923, reached its height about the 19th or 20th of that month. The defendant's home was burdened by a mortgage held by one of the banks of the county and he was at that time endeavoring to get some assurance from the bank to

aid him to harvest the season's crop. He soon found that it was impossible for him to get any assistance in this quarter unless he became a member of the association by signing one of the prepared contracts which the association used for that purpose. About the 20th of April he was called to the bank by one of the officers thereof acting in the interests of the association and urged to sign the contract. Having refused to do so after an hour's persuasion he was turned over to another to whom he also announced his intention to decline to sign the contract. Other persons whose connection with the association was more or less remote frequently urged him to sign and called his attention to the fact that those who refused to sign were being subjected to severe penalties through the destruction of their homes and vineyards and through personal injuries inflicted by what were then termed "night riders." Some of these persons came to him at his ranch, others telephoned to him, and others sent messages through friends urging him to sign and predicting severe trouble if he refused. Finally he was told that if he refused to sign "we are going to get you," or "we will fix you." In the latter part of April he was told that numerous threats were being made against him and that he should leave the county, that "unless you go, the people are after you, and they are going to fix you." He thereupon went to Modesto, where he remained about five days, during which time he received many telegrams and telephone calls from people in Fresno County demanding that he sign the contract. Finally he was approached by two Fresno men who insisted that he return to Fresno and sign up. He again refused and these same people telephoned to him again early in the evening asking him to reconsider and give them his final conclusion. He stated to them that he would not sign the contract and late that night he received a message from one of his neighbors that his home was being wrecked. He thereupon got into communication with his wife, met her in Stockton and learned from her something regarding the methods of the campaign for signatures which was being conducted in his home county; how his neighbors had been threatened and abused and their homes attacked and their vineyards destroyed. He thereupon telegraphed to Mr. Merritt, the manager of the Raisin

Growers Association, asking him to stop the campaign of violence and damage to property conducted by the so-called "night riders," and from this officer he received the reply that no one was authorized by the association to act through coercive or violent measures. He thereupon telegraphed to the sheriff and the district attorney of the county. No reply seems to have been had from the district attorney, but to the wife of the defendant the sheriff of the county said: "Lady, we can't do anything. They only want you to sign, that's all." About two days after the communication with the manager of the association the defendant returned to his home and discovered that the work of destruction executed by those who had raided his home on the night of May 3d for the purpose of forcing him to sign the association contract consisted of the following: The doors and windows of his home were all broken, the furniture was smashed and the bedclothes torn and scattered about the floors of the rooms, the chairs were broken and a new piano was cut up and destroyed, and all the canned fruit and jars of fruit or preserves were broken and destroyed. In addition to this the raiders had overturned a blacksmith-shop in the rear of the house and cut down or destroyed trees on the premises. After having witnessed this destruction he again called upon his banker and was informed that his only safety was in signing the contract. He then called upon his attorney, who had been his confidential adviser for a number of years past, asking him to aid him in the protection of his property and asking his advice as to what proceedings to take. He soon, however, learned that this attorney was actually in the employ of the Raisin Growers Association and the only advice he was able to get from him was that he should sign the contract. Having unsuccessfully appealed for protection to the legally constituted law officers of the county, to the manager of the association, to his confidential banker and to his confidential attorney, and having been informed that his only assurance from further abuses and violence lay in his executing the contract, he went to his banker and signed the contract which had already been prepared for him. As indicating his reluctance to sign at the time he stated to the banker that he felt that in doing so his property was lost, and that he would give the place to him. This oc-

curred on May 9, 1923. On the 25th of August following the defendant gave the association notice of his rescission of the contract upon the ground that it was obtained from him by coercion and threats, and at the same time demanded the return of the contract and notified the association that he would refuse to deliver raisins to the company. In this connection he testified that from the time of his signing the contract he had constantly been in fear of additional oppression on the part of the association and that on account of this constant fear which he entertained he did not seek to cancel his contract earlier. ·

Much of this evidence is corroborated by the testimony of Mary Papazian, the defendant's wife, who pictured the reign of terror which was practiced upon the defendant's neighbors and her unsuccessful efforts to obtain protection from the local authorities. The witness Sally Ship, who lived just across the road from the defendant's home, saw the damage that was done. She had been subjected to the same abuse by so-called "raiders" acting in the interest of those who insisted upon the growers signing contracts with the association, but had refused their demands and had been successful in protecting her home from their threatened lawlessness. Other neighbors of the defendant either witnessed the night of destruction or saw the damage to defendant's home immediately after and others detailed other acts of violence and lawlessness which were committed in the nighttime in the campaign to secure signatures to association contracts. These facts were constantly brought to the knowledge of the defendant by his neighbors and by those actually and actively employed by the association in securing contracts, and he was advised by those in whom he put his trust that, in order to prevent any further destruction to his property, he should sign the contract with the association.

It is only necessary to read the foregoing evidence to be satisfied that the contract was signed under such conditions of duress and menace as to destroy the element of free and mutual consent which is essential to all contracts of this nature. [2] The menace upon which the appellant relies brings the case squarely within the definition of that term found in section 1570 of the Civil Code, "of unlawful and violent injury to the person or property of any such per-

son," while the responsibility of the respondent is covered by that portion of section 1689, Civil Code, which authorizes the rescission of a contract when the consent was obtained by duress, menace, etc., "exercised by or with the conni-vance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." [3] As the evidence of menace under which the contract was signed is wholly uncontroverted and as the respondent's assignor, being a mutual association of the raisin-growers of the locality, had full knowledge of the unlawful acts which were practiced by some of its members, or at least by those "jointly interested," the responsibility of the association for these acts is definitely fixed under the code section.

The only answer which the respondent makes to the appellant upon this point is that this court should assume that the trial court may have drawn the inference that, though all these acts of violence and lawlessness were true, the appellant nevertheless was not really in fear when he executed the contract. In this connection, the respondent states that the trial court found that the defendant was not controlled in signing the contract by coercive acts. We have searched the findings included in the certified transcript and fail to find that any such finding was made by the trial court. If such a finding was made it is patent that it was wholly unsupported by the evidence. [4] If the finding was not made there is no rule of law which requires this court to assume that the trial court would have made a finding contrary to all the competent evidence before it. [5] The plaintiff pleaded a cause of action in replevin. The defendant entered a denial and pleaded affirmatively his right to possession. On the trial, the plaintiff presented a contract purporting to place the right of possession in the plaintiff. That evidence was met by a showing constituting coercion. The court should have been asked to and should have made a finding on the issues brought forward by the parties, during the course of the trial, which were material to the main issue raised by the written pleadings. (*Wolf* v. *Gall*, 176 Cal. 787, 789, 790 [169 Pac. 1017].) The trial court having failed to make a finding on that material issue, such failure constitutes reversible error. [6] The general rule is as stated in 10 California Jurisprudence, 1143, section 362,

"that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact." (*Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191]; *Anso* v. *Anso,* 72 Cal. App. 513 [237 Pac. 814].)

Judgment reversed.

Sturtevant, J., and Langdon, P. J., concurred.