[Civ. No. 5268. Third Appellate District, March 21, 1935.]

RENE PENE, Appellant, v. C. S. MAUK, Special Administrator, etc., Respondent.

Frank J. Barry and J. B. Joujon-Roche for Appellant.

C. S. Mauk, *in pro. per.*, C. S. Wagner, Wm. M. Morse, Jr., and Sidney A. Shoop for Respondent.

PLUMMER, J.—The defendant had judgment in an action begun by the plaintiff for an accounting of money alleged to be due and unpaid the plaintiff for and on account of a certain agreement entered into between the plaintiff and his wife, with Bertrand Pene, deceased, whereby it was agreed that the plaintiff and his wife should give up their employment in the place where they were at work, and enter and begin work in a laundry belonging to the deceased, upon the condition that the plaintiff and his wife would share equally with Bertrand Pene in the profits realized from the conduct of the business; that is to say, the plaintiff and his wife together should receive one-half of the profits, and Bertrand Pene and his wife the other half. From the judgment in favor of the respondent the plaintiff appeals.

In pursuance of the agreement between Bertrand Pene and the plaintiff, the plaintiff and his wife gave up their employment, and on or about the fifteenth day of July, 1928, began working in the laundry owned by Bertrand Pene, and the plaintiff continued working therein until on or about April 29, 1931. It appears that Justine Pene, the wife of the plaintiff, after having worked in the laundry for a number of months gave birth to a child, after which time she ceased to work in the laundry, but the agreement that the plaintiff should receive one-half the profits was testified to as continued in force.

On or about the twenty-ninth day of April, 1931, Bertrand Pene died. Proceedings were had leading to the appointment of the respondent as the executor of the last will and

testament of Bertrand Pene, deceased; notice of publication to creditors is alleged to have been given; and the plaintiff filed a claim for the amount alleged as the balance due for and on account of the agreement with the deceased, which claim was rejected by the executor. In connection with the filing of the claim the plaintiff requested an accounting, which was denied. The answer of the defendant denied the allegations of the plaintiff's complaint, which set forth the facts which we have herein stated, but did not deny the due execution and presentation of the claim against the executor of the estate.

The court found that the profits of the laundry, prior to the death of Bertrand Pene, were approximately $1,000 a month. It also found as follows (in paragraph IV): "That it is not true that on or about the 7th day of July, 1928, or at any time thereafter, the said Bertrand Pene proposed that he would give plaintiff and said Justine Pene one-half of the profits of said laundry, and it is not true that the plaintiff and said Justine Pene orally accepted any such proposition."

The court also found, in paragraph VI, as follows: "The court finds that it is true that the plaintiff and said Justine Pene received various sums of money at various times from the said Bertrand Pene, in the aggregate sum of about $7,000, but finds that such moneys were paid in compensation for said services."

While the record shows that the plaintiff and his wife went to work in the laundry belonging to Bertrand Pene, on or about the fifteenth day of July, 1928, the agreement between the parties was entered into on or about the seventh day of July, 1928. It will be noted that while the court found that the plaintiff and Justine Pene had been paid in the aggregate about $7,000 as compensation for their services, there is no finding that the plaintiff and Justine Pene had been paid in full, from which it necessarily follows that if the testimony shows without contradiction, as will hereafter be mentioned, that the compensation to be received for their services was one-half the profits, and the profits are shown to be $1,000 a month, as found by the court, then and in that case the point raised by the appellant that the findings are not sustained by the evidence is well taken. A mere calculation demonstrates conclusively that the plaintiff

and his wife are entitled to further compensation based upon the promise of receiving one-half of the profits even though no partnership in the business is shown to have existed.

Bertrand Pene was the father of Rene Pene, and his business consisted in conducting a laundry. Rene Pene and his wife were engaged in laundry work for another employer. The testimony shows, without contradiction, that on or about the seventh day of July, 1928, Bertrand Pene visited Rene Pene, and his wife, and stated to the plaintiff and Justine Pene, the wife of the plaintiff, that if they would give up working where they were employed and come and work in the laundry owned by him, as compensation he would give them one-half of the profits, stating at the time what the profits of the business were. After some consideration the proposition made by Bertrand Pene was accepted by the plaintiff and his wife, who gave up work where they were employed and entered the laundry owned by Bertrand Pene, and continued work therein from the fifteenth day of July, 1928, until the death of Bertrand Pene on April 29, 1931, save and except that Justine Pene, after the birth of the child referred to, no longer worked in the laundry.

A number of witnesses were called by the plaintiff, all testifying as to the fact that the agreement between the parties was as we have set forth herein. Justine Pene testified as follows: That Bertrand Pene called up on the telephone and wanted to speak to her and her husband; that Rene Pene, her husband, was absent at the time, but afterwards, on the seventh of July, 1928, Bertrand Pene came to the house, picked her up and drove her to the place where she was at work; that Bertrand Pene told her he was old, ill and could not go on with the business any more, and the business was in the hands of strangers and he preferred to have someone of his family run the business. "He said he wanted my husband and myself to go to work with him, and if he made a dollar, we would get fifty cents of it; and I said, 'Well, I don't know'; I said, 'Rene and you have been together before and you could not get along; we are both working now and I don't like to change jobs; suppose we could not get along?' He said, 'This time we will get along; we will just give in to each other.' I said, 'I don't

know; we will have to think it over.' He said, 'I am going down to see Rene.' I said, 'I don't believe you will be able to see Rene because he is working.' He said, 'I know the foreman there and he will let me in, and I will go and see him.' '' On the evening of the same day Bertrand Pene came to the house where the plaintiff and Justine Pene were living. ''He asked us if we had decided what we were going to do. I said I didn't like the idea of living there, but maybe we might be able to go to work. And we decided to go to work. Q. What was said when you decided to go to work? What was said by either you or your husband? A. He says, 'Monday you notify your bosses that you are leaving.' Q. Who said that? A. Bertrand Pene. He said, 'Monday you notify your bosses you are leaving work on Thursday—that you are leaving work Wednesday evening, and Thursday morning we will leave for San Francisco.' Q. What did you say? A. I said all right. Q. What did your husband say, if anything? A. He said that was all right, too.'' At the same time, Bertrand Pene, in referring to compensation said that the plaintiff and his wife would receive one-half of the profits; if he made a dollar, they would get fifty cents. The record shows that after this conversation Bertrand Pene and the plaintiff and his wife made a trip to San Francisco.

August Ferran testified that he had a conversation with Bertrand Pene in which he said, ''We are going to run the place, and if we get one dollar we get fifty cents each. Q. Did you mention anybody else as being his partner? A. He meant his son; he said he didn't feel too well. Q. Please state what the old man said at that time? A. Well, the old man says, 'We are going to run the place together, and if we make one dollar, it will be fifty cents for each.' Q. Did he say who he meant by 'we'? A. His son, he meant his son.'' This conversation took place at Redwood City where Bertrand Pene and the plaintiff and his wife stopped on their visit to San Francisco which we have just mentioned.

Mrs. Clemence Ferran testified that she was present at the conversation; that Bertrand Pene said he was going to take his son and his daughter-in-law with him in business and give them, ''if he made a dollar, give them fifty cents, give them half; that is the way he said he was doing; he

was going to take the son and daughter-in-law in business with him and give them one-half''.

The witness J. B. Castello, testified that he met Bertrand Pene in the early part of July at the Wardrobe Laundry where the plaintiff was employed; that at the time he had this conversation with Bertrand Pene: ''Rene and I was standing there at my desk where I was working, talking, when he came in and Rene introduced me to him. The first thing he (Bertrand Pene) said, was: 'What do you think of my boy? I want him to come back and work with me; I will give him a half interest in the business and a ten-day vacation for him, myself and his wife.' Rene had some other work to do in the back, and Mr. Pene followed him out there.''

The witness Bruchie testified as follows: ''He (referring to Bertrand Pene), said, 'Come down and go to work for me.' I was driving for another laundry and I didn't want to quit my job. Q. Who was present at that time? A. Rene Pene. And he told me I didn't have to be afraid because I would be working for my brother-in-law and my sister. Q. Who is your brother-in-law and your sister? A. Mr. Rene Pene and Mrs. Justine Pene. Q. What relation is Justine Pene to you? A. She is my sister.''

During the trip it appears that the plaintiff, his wife, and Bertrand Pene stopped at the home of a Mr. Verdier in San Jose, where practically the same statement was made in relation to the plaintiff and his wife entering the laundry belonging to Bertrand Pene. To the same effect was the testimony of Mr. and Mrs. Bersinger, at whose home the parties stopped on the trip referred to. At this home Bertrand Pene stated that he had been in business for twenty-five years and his son was entering the business to help him out.

The testimony in the record shows that after the plaintiff and his wife began work in the laundry owned by Bertrand Pene, that Bertrand Pene and plaintiff and his wife drew from the business the same sums of money. At first, $65 a week was drawn from the business by Bertrand Pene, and $65 a week drawn in favor of the plaintiff and his wife. Later on, $75 a week was drawn by the respective parties. Still later on, $100 a week was drawn by the respective parties, the plaintiff and his wife together receiving at all

times the same sum that was drawn from the business by Bertrand Pene.

The testimony which we have summarized stands in the record without any substantial contradiction whatever; we might add, without *any* contradiction. All that is called to our attention is the fact that in making up an income tax return, there appears in on corner of a copy thereof a notation as to salary paid the plaintiff. Who made this notation, or why it was made, is not explained. The purpose, however, is quite apparent,—a reduction in the tax due the government. The payroll of the laundry, however, does not include the names of either Rene Pene or Justine Pene, which negatives whatever weight might be given to the notation on the copy of the income tax return.

Where the testimony is inherently improbable, the court is under no obligation to accept the same, although uncontradicted, but where the testimony is not such, where there is nothing to indicate its improbability or the untruthfulness thereof, the rule is well settled that uncontradicted testimony cannot be ignored.

In the case of *Michaels* v. *Pacific Soft Water Laundry,* 104 Cal. App. 349 [286 Pac. 172], appears a statement of the rule which we think applicable here: "Upon the evidence before it the trial court should have made a finding favorable to the bank upon this issue. The general rule is that the testimony of a witness cannot be wholly disregarded, but that unless it is impeached or contradicted by other testimony, by some presumption, or by any inference deducible from the facts proved, or unless it is inherently improbable, the court must accept it as true. (Citing 10 Cal. Jur., p. 1143; *Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191]; *Sun-maid Raisin Growers* v. *Papazian,* 74 Cal. App. 231 [240 Pac. 47].)" Other cases might be cited, but the foregoing we deem sufficient.

In support of the judgment of the trial court the respondent urges first, that the testimony of Justine Pene was inadmissible. At the time of the trial the respondent made the following objection thereto: The witness Justine Pene being asked to relate the conversation had with Bertrand Pene, counsel for respondent made the following objection: "I object to the question and move the answer be stricken out on the ground that this witness is disqualified

under the provisions of section 1880 of the Code of Civil Procedure.'' The rule is well settled that upon appeal only such errors will be reviewed as are urged by the appellant as grounds for reversal. Errors committed against a successful party will not be noticed upon appeal. (2 Cal. Jur., p. 839; *Scaward* v. *Malotte*, 15 Cal. 304; *Estate of Olmsted*, 122 Cal. 224 [54 Pac. 745]; *Coyle* v. *Lamb*, 123 Cal. 254 [55 Pac. 901]; *Rapp* v. *Southern Service Co.*, 116 Cal. App. 699 [4 Pac. (2d) 195].)

We may add that the objection interposed by the respondent is too general. As said in *Martin* v. *Travers*, 12 Cal. 243: ''The objection fails to specify the point upon which it rests, and did not merit consideration for its generality. To have entitled it to notice the party should have laid, as the authorities say, 'his finger on the point at the time'.'' (Citing a number of cases.)

The disqualification paragraph of section 1880 of the Code of Civil Procedure includes several distinct classes. By reason of the fact that the respondent is not in a position to raise the question, we need not consider whether the adoption of section 161a of the Civil Code, Statutes of 1927, page 484, alters the rule relative to the testimony of. a wife where her husband is a plaintiff, permitting such testimony as set forth in the case of *Badover* v. *Guaranty Trust & Savings Bank*, 186 Cal. 775 [200 Pac. 638].

 The pleadings not having raised the question as to the due execution and presentation of a claim against the estate of Bertrand Pene by the plaintiff, the argument of the respondent to the effect that the claim as presented was insufficient need not be considered.

By reason of the fact that an inspection of the record shows that the amount received by the plaintiff, as found by the court, is incorrect, and also that a recalculation would be necessary to determine the amount of profits, the appellant's request that this court determine the same and order judgment in behalf of the plaintiff cannot be allowed.

The findings of the court being directly contrary to the uncontradicted testimony set forth in the record showing the relationship of the plaintiff with Bertrand Pene, and the contract entered into between them as to how compensation should be determined, it follows that the judgment

must be reversed, and it is so ordered, and the cause remanded for a new trial.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 20, 1935.