[Civ. No. 5082. First Appellate District, Division Two.—March 10, 1925.]

# J. M. EULESS, Appellant, v. ELLA MAY WESTPHAL, as Executrix, etc., Respondent.

[1] BROKER'S COMMISSIONS — PLEADING — FINDINGS—JUDGMENT—EVI-
DENCE—APPEAL.—In an action to recover a commission for the sale of real property, where the complaint is in two counts, one in the form of a common count for services rendered and the other alleging the specific acts and facts upon which plaintiff claims a right of recovery, and the trial court makes specific findings of facts, which support its judgment in favor of defendant, and there are no findings expressly referring to the allegations made in the first count, but the court does make a general finding that "other than the facts hereinabove found no facts were proven in support of the allegations set forth in either count," upon appeal on the judgment-roll alone the appellate court must presume, in favor of the judgment of the trial court, that the allegations of plaintiff's first alleged cause of action were not proven.

[2] ID.—CONTRACTS—INTERPRETATION—EVIDENCE.—Any contract is to be interpreted in view of the surrounding circumstances with the aim to arrive at the intention of the parties, and cited cases are of little aid unless they arise out of similar circumstances.

[3] ID.—CONFIDENTIAL LETTER TO AGENT—CONSTRUCTION—CONTRACT OF EMPLOYMENT.—In this action to recover a commission for the sale of real property, in view of the surrounding circumstances, particularly the relationship existing between plaintiff and defendant, plaintiff for many years having been the confidential agent of defendant in charge of the latter's properties, the trial court was justified in concluding that a certain letter from defendant to plaintiff, and wherein the former stated that he would "give five thousand to anyone making a sale" at a price therein stated, did not constitute a contract of employment, but was merely part of a friendly correspondence of information and inquiry between a principal and his agent.

[4] ID.—CONSTRUCTION OF CONTRACT—FUNCTION OF TRIAL COURT.—It is the function of the trial court to determine the meaning and effect of an alleged contract in suit in the light of all the facts and surrounding circumstances; and when the meaning is doubtful the appellate court is not able to say on appeal that the trial court was wrong when the evidence is not before the appellate court.

[5] ID.—EMPLOYMENT—FINDINGS—CONCLUSIONS OF LAW.—In an action to recover a commission for the sale of real property, findings that defendant caused a certain letter to be sent to plaintiff and

that plaintiff, in seeking a purchaser, acted pursuant to and in reliance upon that and other letters from defendant, did not entitle defendant to judgment, where the trial court also found, upon sufficient evidence, that defendant did not employ plaintiff to sell the property in question; and the fact that this latter holding appears under the heading of conclusions of law rather than in the findings of fact is not ground for the reversal of the judgment in favor of defendant.

[6] ID.—CORRECT JUDGMENT—EVIDENCE—APPEAL.—Where the record on appeal from a judgment in favor of the defendant in an action to recover a commission for the sale of real property discloses a case where such judgment would be correct if certain evidence had been before the trial court, the appellate court will not reverse the judgment in the absence of a showing that the trial court did not have that evidence.

---

(1) 4 C. J., p. 786, n. 35.   (2) 13 C. J., p. 542, n. 30.   (3) 9 C. J., p. 655, n. 42.   (4) 4 C. J., p. 777, n. 69.   (5) 38 Cyc., p. 1980, n. 54, p. 1987, n. 88.   (6) 4 C. J., p. 787, n. 36.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

N. Lindsay South and George A. Clough for Appellant.

Humphrey, Grant, Zimdars & Warren for Respondent.

NOURSE, J.—Plaintiff sued F. D. Vanderlip to recover a commission for the sale of real property situated in Fresno County and owned by said Vanderlip. Judgment went for defendant, from which plaintiff appeals on the judgment-roll alone. Since the appeal was taken the defendant died and E. M. Westphal, as executrix of his estate, has been duly substituted in his stead.

The action was tried on plaintiff's amended complaint and the answer thereto. The amended complaint was framed in two causes of action. The first was in the form of a common count and alleged that within one year last past the defendant became indebted to plaintiff for services rendered in the sum of $8,250. The second alleged that the defendant was the owner of certain real property in the county of

Fresno; that on the third day of January, 1919, he employed plaintiff to sell the same under a written memorandum which is attached to the amended complaint and marked exhibit "A"; that pursuant to said memorandum the plaintiff procured a purchaser willing, ready, and able to purchase and who did purchase the property for $165,000 on terms satisfactory to the defendant; that said memorandum provided that defendant would pay to anyone making a sale a commission in the sum of $8,250; that the sale was consummated on April 22, 1920; and that plaintiff has demanded payment of the sum of $8,250, which demand has been refused. The writing of January 3, 1919, on which the plaintiff sued, reads as follows:

"Mr. J. Euless:

"Dear Friend:—Want to tell you there is a party here that wants an option on all of my Fresno property but if there is any prospect of your selling any of it would rather not give it to him. Have priced it to him at one hundred and twenty-five thousand dollars. Will give five thousand to anyone making a sale at that price. If I give this man an option will give him a letter to you and you can show him the property and do all you can to help the thing along.

"Wishing you all a Happy New Year, am as ever,

"Sincerely yours,

"F. D. VANDERLIP."

[1] Directing our attention to the first cause of action it appears that the trial court made no finding expressly referring to the allegations made therein; but it did make the general finding that "other than the facts hereinabove found no facts were proven in support of the allegations set forth in either count set forth in the complaint on file herein." We do not see anything in the other findings which would support a judgment in favor of plaintiff on his first cause of action and we must, therefore, in support of the judgment rendered, presume that the allegations of that cause were not proved.

The second cause of action was based on the letter of January 3, 1919, quoted above. The findings are full of matters covering other letters and oral conversations, none of which is within the issues framed by the pleadings. As to the letter upon which the cause of action is based the

court found that the defendant "caused (it) to be written and forwarded to plaintiff"; that "there is no evidence to show whether said letter was written in the room of defendant, or in the room of his daughter, or that defendant had seen the letter prior to the trial hereof"; that it was written by defendant's daughter, Ella Westphal, who had written all his letters for eight or nine years prior to the trial; that though these letters were written by the daughter at defendant's request and instruction, she "had no written authority of any kind" to sign his name. The trial court also found that "pursuant to the request contained in said letters and in each of them" plaintiff promised the defendant to endeavor to sell said property; that "subsequent to the writing of said letters and prior to the appearance of" the purchaser, defendant orally informed plaintiff that he had raised the price of said property to $130,000; that, pursuant to the provisions contained in said letters, the plaintiff did, on the 16th of October, 1919, procure a purchaser in the name of one Droge who was ready, willing, and able to purchase said property for $130,000 and who paid the plaintiff $1,000 as a deposit on account of the purchase price thereof; that defendant refused to sell to Droge on the terms offered and that an action was thereupon commenced by Droge against this defendant to compel the specific performance of "his contract" to sell said property; that on November 17, 1919, defendant served on plaintiff a notice of revocation of his authority to sell the property; that in April, 1920, after negotiations conducted by the defendant alone, part of the property was sold by defendant to an association of persons, of which Droge was one, for the sum of $165,000, and that the balance of defendant's property in Fresno and included in Droge's offer of $130,000 was of the value of $18,000. From these facts the trial court concluded that the defendant did not employ plaintiff to sell the property mentioned.

On the appeal we are referred to *Curran* v. *Hubbard,* 14 Cal. App. 733, 736 [114 Pac. 81, 82], where the owner wired to the broker to "Get me an offer"; to *Kennedy* v. *Merickel,* 8 Cal. App. 378, 383 [97 Pac. 81, 83], where the language used was "Hoping to hear from you again with a proposition"; and to *Toomy* v. *Dunphy,* 86 Cal. 639, 642 [25 Pac.

130], where the owner wrote, "Henry Toomy can arrange for the sale of my ranch." In each of the cases cited the appellate court held that the writing was sufficient to constitute a contract of employment. [2] But any contract is to be interpreted in view of the surrounding circumstances with the aim to arrive at the intention of the parties and cited cases are of little aid unless they arise out of similar circumstances.

[3] Here the court found that for many years past the plaintiff had been the confidential agent of the defendant in charge of all the latter's property in the county of Fresno. The letters which appear in the record are all of a friendly confidential nature such as might pass between persons occupying positions of trust and confidence. No one of them is of the character which would be expected when one of the parties standing in that relation would seek to change the relation to an employment for an entirely different purpose. The letter of January, 1919, upon which plaintiff's cause of action is based, is merely a friendly letter of information telling the agent of defendant's own efforts regarding the sale of the property—a matter wholly foreign to the subject to the agency then existing between the parties. The statement therein that the owner "will give five thousand to *anyone* making a sale at that price" ($125,000) is not in itself an agreement to pay that sum to the plaintiff if he made a sale. It is merely the expression of the readiness of the owner to enter into a contract with any broker who gives promise of making a sale on those terms.

We do not know why the plaintiff picked on the letter of January, 1919, as the basis of his suit, unless it was because that letter was one of the last in point of time written. If any one of the letters in the record shows a contract of employment within the holding of the cases above cited, it is the letter of October 31, 1917, where the defendant wrote "wish you would see if you can get an offer for the twelve lots." The other letters plainly indicate the defendant's anxiety regarding the sale; some of them plead with the plaintiff to do something looking toward the sale of a part or all of the lots. If the letter of October, 1917, is to be treated as a contract of employment the fact that, so far as

this record is concerned, the plaintiff did nothing—did not even offer a prospect—until two years later is sufficient to support the judgment, the offer not having been made within a reasonable time.

Our own interpretation of the letter of January, 1919, based solely on the record before us, is that it was nothing more than a part of a friendly correspondence of information and inquiry between a principal and his agent. If it had been the intention of the owner to employ the plaintiff to sell the property he would not have used the expression— will give five thousand to *anyone* making a sale. This is particularly true when we recall that in the same letter the owner told the plaintiff that he was then contemplating giving an option to purchase all the property to another party.

But we are not required to speculate as to what was before the trial court when it reached its interpretation of the letter. [4] It is the function of the trial court to determine the meaning and effect of an alleged contract in suit in the light of all the facts and surrounding circumstances. When the meaning is doubtful we are not able to say on appeal that the trial court was wrong when we have none of the evidence before us. The findings of fact do not necessarily require a judgment in favor of the plaintiff. [5] It is true that the court found that the defendant caused the letter of January, 1919, to be sent to the plaintiff and that the plaintiff in seeking a purchaser acted pursuant to and in reliance upon all the letters mentioned in the findings. But it also found that the defendant did not on January 3, 1919, or at any other time, employ plaintiff to sell the property described. Of course, the fact that this latter holding appears under the heading of conclusions of law rather than in the findings of fact is no ground for the reversal of the judgment. (*Burton* v. *Burton,* 79 Cal. 490, 495 [21 Pac. 847].)

[6] If there was any evidence which would compel the court to interpret the letter as a binding contract of employment within the terms of the statute of frauds it was the duty of the appellant to place that evidence before us on this appeal. From the fact that he has not done so we may fairly assume that this evidence was adverse to him

because if it had been favorable he would have placed the facts before this court so that we would have been in a position to determine whether prejudice resulted from the error complained of. Putting it in another way, when the record before us discloses a case where the judgment of the trial court would be correct if certain evidence had been before it we should not reverse the judgment in the absence of a showing that the trial court did not have that evidence, because, in such a case, we cannot say that prejudice has resulted within the meaning of section 4½ of article VI of the constitution.

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 8, 1925.