[Civ. No. 6539. First Appellate District, Division One.—January 24, 1929.]

TRACY–WALDRON FRUIT COMPANY, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

H. A. Frank, R. F. Gaines and J. A. Tracy for Appellant.

Guy V. Shoup and Henley C. Booth for Respondent.

THE COURT.—The plaintiff, a shipper of perishable fruits and vegetables, brought this action against defendant carrier to recover for damage to fifteen separate shipments, each shipment being a carload of grapes or vegetables and the damage to each carload constituting a separate cause of action.

The shipments originated between October 1 and December 1, 1922, on the railroad line of defendant in California, and each was billed and transported to a point upon some connecting carrier in another state. The defendant with its connecting carriers maintained schedules for the transportation to its destination of freight such as that contained in said shipments, these being reasonable for the time required therefor under ordinary conditions. The shipments were delivered to the defendant in good condition, and for each was issued to the plaintiff a bill of lading. These the plaintiff held until surrendered to the defendant with its written claims for the damage caused by delays in transit beyond the schedule time and due to which the plaintiff received from the sale of the freight shipped less than it would had the shipments been moved according to schedule. Each bill of lading contained the following clause: "Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession) the carrier or party in possession shall not be liable for loss, damage or delay while the property is stopped and held in transit upon the request of the shipper, owner or party entitled to make such request, or resulting from a defect or vice in the property, or for country damage to cotton, or from riots or strikes."

The defendant claimed that the delays were not due to negligence but to a strike of its employees and those of connecting carriers, and that the losses claimed by the plaintiff were therefore not actionable because of the strike clause in the bill of lading; that it and its connecting carriers at all times insisted in good faith upon the validity and merits of their defense under the above clause, but that nevertheless, after the claims here involved were presented, offered to

settle these and all claims of shippers of perishable fruits and vegetables during the strike for fifty per cent of the loss due to the delay, and that the plaintiff with other shippers accepted the offer, settled their claims accordingly and gave to the defendant receipts in full therefor.

The complaint in each cause of action sought to recover the difference between the amount paid by the defendant and the amount claimed as the damage due to the delay.

The findings made by the trial court are voluminous and need not be quoted in full, the portions material here being as follows:

"IX. On the 1st day of July, 1922, a general strike was instituted by the employees employed in the railroad shops of the defendant and of all carriers over whose railroad lines said shipments or any of them moved, and of all other railroad carriers in the United States, and on said 1st day of July, 1922, more than one-half of said employees voluntarily quit and did not resume their employment. That said strike caused impairment of the efficiency of the locomotives used by said carriers and of the efficiency of their shop forces and caused congestion at their principal terminals and a general slowing down of their transportation service. That said strike was accompanied by violence and intimidation by strikers and their sympathizers. That said strike and the said conditions resulting therefrom lasted from said July 1, 1922, until after the movement and delivery of the shipments made by plaintiff. That said strike was a matter of general notoriety and public comment. That many thousands of claims for damages due to delay of perishable shipments that moved during the last six months of the year 1922 over the railroads of the defendant and the railroad carriers over whose railroad lines plaintiff's shipments moved were made by the owners of said shipments against defendant and the railroads over whose lines plaintiff's shipments moved, and that defendant and said railroads in good faith claimed and asserted to said claimants, including the plaintiff, that all of the delay and delay coupled with improper protective service that occurred to the shipments embraced in said claims, including plaintiff's claims during the last six months of 1922, was due and attributable to said strike, and not to any negligence or failure of duty by any railroad carrier, and also claim that therefore, pursuant to

said bill of lading provision that carrier should not be liable for loss, damage or delay resulting from strikes, said carriers were not liable for all or any portion of any damages sustained by delay of perishable shipments, including plaintiff's perishable shipments, over said normal schedules of said carriers during the last six months of the year 1922, or for any damages caused by such delay coupled with improper protective service.

"That said claims of defendant and said other carriers respecting the effect of said strike were disputed by plaintiff and the validity of said claims by said railroad carriers respecting said strike was a matter in dispute between plaintiff and defendant at all times during the negotiations between them that preceded the settlements hereinafter found to have been made.

"That the evidence does not show that any car shipped as aforesaid by plaintiff was actually delayed in transit by violence or intimidation accompanying said strike, or that the locomotive engine or engines that hauled such car were in unfit or deteriorated condition because of said strike, nor does the evidence identify any car shipped by plaintiff as having been actually delayed by said strike.

"X. That the defendant and its connecting carriers, including the carriers over whose railroad lines plaintiff's shipments moved, and other carriers affected by said strike endeavored to arrive at an agreement among themselves as to the basis upon which they would make offers of settlement of claims on shipments of fresh fruit and fresh vegetables moving between July 1, 1922, and December 31, 1922, over their respective lines of railroad during the period when it was claimed by them that any delay in the movement of such shipments was attributable to said strike and was excused by the bill of lading provision relieving carriers from liability for loss, damage or delay caused by strikes.

"That said carriers on the 23rd day of March, 1923, reached an agreement among themselves as to such basis, which agreement was in writing and was as follows:

"'Chicago, March 23rd, 1923.

"'Basis for disposition of claims on shipments of fresh fruit and fresh vegetables only, moving between July 1st,

1922, and December 31st, 1922, inclusive, agreed to by the railroads listed below:

" 'First: Claims for loss or damage resulting directly from acts of violence or intimidation, causing interruption of traffic, when such facts can be conclusively proven, shall be disallowed.

" 'Second: Claims for verified loss and damage, other than for delay, due solely to carriers' negligence, shall be disposed of as heretofore.

" 'Third: Loss and damage claims (not covered by paragraphs 1 and 2) on shipments moving between July 1st, 1922, and December 31, 1922, inclusive, where the only factors to be considered are those of delay in transit, or delay combined with improper protective service, will be settled on the basis of not to exceed fifty (50%) per cent of the proven loss or damage, where the delay caused the missing of the first market after the market for which intended, under participating carriers' normal schedules.'

"The said terms of said agreement of March 23, 1923, were thereupon communicated in writing by defendant to plaintiff, and defendant offered to settle and compromise with plaintiff all claims plaintiff had or might have on account of shipments of the character and during the period described in said agreement where defendant was the originating carrier, which claims embraced the claims described in the tabulation set forth in Finding III hereof.

"Defendant did not at any time admit that any delay to any of said shipments was caused otherwise than by said strike or was caused by the negligence or want of care of defendant or any of the railroads over whose lines said shipments moved, and at all times asserted that it and all carriers over whose lines said shipments moved had a good and valid defense to said delay and to any claim on account thereof or arising therefrom, directly or indirectly, and that said defense was based on said strike clause in said bill of lading and on the actual existence of said strike conditions and the consequent effect thereof.

"XI. Following the communication of said written basis of settlement by said defendant to said plaintiff, duly authorized representatives of said plaintiff and said defendant met and considered and discussed each of said claims described

in the foregoing tabulation, and at the end of said discussion arrived at an amount which said plaintiff was willing to accept and receive in such compromise and settlement in full and on account of the claim as to which said amount was at any time due. The arrival at said amount was in strict accordance with the basis of settlement described in said agreement of March 23, 1923, set forth in finding X hereof. . . . On said date on which each of said amounts was so arrived at there was endorsed on each claim a written statement that it was amended to the amount so arrived at, and the plaintiff executed such endorsement.

"XII. . . . In each case the defendant delivered to the plaintiff on said date of payment a written instrument signed by defendant's duly authorized officials.

"The instrument representing the claim sued upon in plaintiff's first cause of action was in words and figures as follows:

"'Expense voucher payable. Standard form 219.

"'Southern Pacific Company   Pacific System

"'Dept. No. 16052

"'San Francisco, California, June 27, 1923.

"'Registered in June 1923.

"'To Tracy-Waldron Fruit Company,                     Dr.

"'510 Battery street, San Francisco, Calif.

"'For all loss and damage on shipments of deciduous fruit (grapes) 10/7/22.

"'S. P. claim No. 578602-52-E.   $966.97

"'Clm'ts bill dated 1/23/23. No. 1874-18. Amended 6/22/23.

"'I hereby certify that the above account is correct. E. M. Bridgman, for Freight Claim Agent.

"'The above account has been examined, found correct and registered.—E. V. Randol, for Auditor Misc. Accounts.

"'Approved—E. W. Clapp, for Freight Traffic Manager.

"'Approved for payment—W. H. Dick, for the Auditor.

"'When signed by the Assistant-Treasurer or his duly authorized representative and properly endorsed by payee this voucher become a SIGHT DRAFT for nine hundred sixty-six and 97/100 dollars, $966.97, in full settlement of above account and is payable at the office of Assistant-Treas-

urer Southern Pacific Company—Pacific System, San Francisco.

" 'H. G. BLIGH, for Assistant Treasurer.

" 'San Francisco, Calif.'

"On the back of the instrument was printed the following:

" 'Endorse here. This voucher is endorsed as an acknowledgment of the receipt of payment in full on account as stated within.

" '_____,

" 'Payee.'

and the plaintiff endorsed the instrument: 'Tracy-Waldron Fruit Company, by J. R. Bordeaux.'

"The instruments delivered by defendant to plaintiff for each of the other accounts . . . were identical in form with the instrument hereinbefore set forth, and in substance each of them described the claim of which it was in payment. . . . The plaintiff endorsed each of said instruments in the manner in which it, as aforesaid, endorsed the instrument hereinbefore set forth at length, and the plaintiff did on or about the date of each of said instruments receive from the defendant in cash the amount therein specified . . . and did retain said amount and has never returned the same or any part thereof, or offered to return the same or any part thereof, to defendant, and did not until the institution of this action question the force and effect of any of said vouchers.

"XIII. That said amounts were not nor was any of them paid to plaintiff by defendant on account of the claim described in the voucher by which such amount was paid, but said amounts were and each of them was, paid to plaintiff by defendant and accepted by defendant as and for a full payment and settlement of plaintiff's claim, as stated in such voucher. That defendant has not wrongfully or at all retained from plaintiff the sum specified in each of plaintiff's separately stated causes of action, or any sum whatever, and that plaintiff is not entitled to recover interest from any date on any amount or at any rate."

The court further found that the sums so paid by defendant to plaintiff were accepted by the latter in full satisfaction and discharge of its claims and that said claims would and should be settled and compromised by such payments.

■ Appellant bases its right to recover upon section 20 of the Interstate Commerce Act as amended June 29, 1906, March 4, 1915, and August 9, 1916, which, so far as material, provides:

"(11) That any common carrier, railroad or transportation company subject to the provisions of this act receiving property for transportation from a point in one state or territory or the District of Columbia to a point in another state, territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; and any such common carrier, railroad or transportation company so receiving property for transportation from a point in one state, territory or District of Columbia to a point in another state or territory, or from a point in a state or territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly within a territory shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage or injury to such property caused by it or by any such common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to

the manner or form in which it is sought to be made is hereby declared to be unlawful and void. . . . ''

It is not appellant's contention that the strike clause in the bill of lading was invalid, or that the act rendered illegal attempts to compromise claims for damage to interstate shipments based upon the alleged negligence of the carrier where such negligence is denied and the facts would otherwise constitute as between the parties a valid accord and satisfaction; nor in our opinion would the language of the act reasonably support such an interpretation. It is claimed, however, that negligence was in effect admitted by the agreement between the carriers set out in finding X above, but notwithstanding, it declared its intention to pay and paid but fifty per cent of the loss caused thereby, and that payment of less than the full actual loss or injury to the property shipped was by the Interstate Commerce Act forbidden.

Whatever the effect of the payments, had the same been made as claimed, such was not the conclusion which the trial court drew from the negotiations, oral and written, between the parties, and we cannot say that it erred in this respect. Under such circumstances the construction given thereto by the trial court must be upheld. (*Euless* v. *Westphal,* 71 Cal. App. 611 [235 Pac.. 742] ; *Manley* v. *Pacific Mill & Timber Co.,* 79 Cal. App. 641 [250 Pac. 710] ; *Slama Tire etc. Co.* v. *Ritchie,* 31 Cal. App. 555 [161 Pac. 25].) Moreover, the above findings are supported by direct testimony, which the court believed, that the alleged negligence and liability of the carrier was at all times in dispute between the parties, and that the payments were made and received as a compromise and settlement of the claims.

The findings of the court are fully supported by the evidence and the judgment is accordingly affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on February 23, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 25, 1929.

All the Justices concurred.