[Civ. No. 4909. Third Appellate District.—May 29, 1934.]

MALVENA GALLATIN, Respondent, v. MAX MAR-
KOWITZ et al., Appellants.

Busick & Busick for Appellants.

Albert Monaco and Heller, Ehrman, White & McAuliffe for Respondent.

PULLEN, P. J.—Malvena Gallatin, the plaintiff and respondent herein, was the owner of a lot in the city of Sacramento, on which was situated an old brick building consisting of the ground floor and two or three upper stories. The entire building was leased to George Manoles until May 31, 1923, who had subleased to Ned Licht a store on the ground floor for a term also ending May 31, 1923. In February, 1921, the upper stories of the building were condemned by the city of Sacramento; that thereafter Malvena Gallatin demolished the entire building, forcing Licht to vacate about March 16, 1921, and thereafter neither Manoles nor Licht were tenants of or in possession of any part of said premises.

On May 26, 1921, Malvena Gallatin entered into an agreement to sell the property to Max and Deborah Markowitz. Inasmuch as this appeal is concerned with this agreement the material portions are here set forth as follows:

"This agreement made this 26th day of May, 1921, by and between Malvena Gallatin, hereinafter known as the seller, and Max Markowitz and Deborah Markowitz, hereinafter known as the purchasers, witnesseth: . . .

"It is understood that the property herein described has heretofore been leased to one George Manoles and that said George Manoles has sub-let the same to sundry persons and that there was formerly a building on said property, part of which was three stories and part two stories, and that the said building was condemned by the city authorities of the city of Sacramento; that in conformity with said condemnation proceedings, part of the building has been demolished and there is a question as to whether the leases covering said property could be enforced by the lessees. The purchasers hereof agree to make their own arrangements with the subtenants of said George Manoles and agree not to hold the seller responsible in any manner whatsoever for failure or non-performance of said leases or for any claims which may be made by said lessees under said leases. It being understood, however, that in the event that said George Manoles should bring any action to enforce his lease, the

seller is to defend such action and is to pay all expenses connected therewith. . . .

"In the event that any of the tenants in the said property other than George Manoles bring action to enforce their lease, the purchasers shall defend such action and are to pay all expenses connected therewith. . . . "

On June 30, 1921, Markowitz accepted title to the property and commenced the erection of a building thereon. Ned Licht, one of the former tenants of plaintiff in the old building, was at all times ready, able and willing to perform the terms of his lease and so notified all parties concerned, but Markowitz refused to provide for him in the new structure except in a small store at an increased rate over his former rental. This arrangement Licht refused to accept and commenced an action against Malvena Gallatin as lessor, for damages. Malvena Gallatin immediately notified Markowitz of the commencement of the suit and that the action was one under the terms of their contract. Thereupon Markowitz and Gallatin jointly employed counsel, who undertook the defense of the action, each contributing toward the costs and expenses of the defense thereof. At the conclusion of the trial a jury found for Licht and awarded him damages in the sum of $3,500. Upon rendition of this judgment Malvena Gallatin demanded of Max and Deborah Markowitz that they assume and pay or otherwise satisfy said judgment and reimburse her for her costs and expenses paid out or incurred in the defense of the action. Then, for the first time, Markowitz denied any liability to satisfy the judgment or to pay any of the costs or disbursements of the action. Thereafter Malvena Gallatin arranged with Licht for the payment of $3,183.50 in satisfaction of the judgment and notified Markowitz of such arrangements and demanded that he arrange to pay that amount or proceed with an appeal. Markowitz declined to pay the judgment or assume any obligation with respect to the litigation and Mrs. Gallatin thereupon paid the amount in satisfaction of the judgment, together with certain items of costs and counsel fees. The present action is for the recovery of the sum thus paid.

Judgment was rendered in favor of plaintiff, from which Markowitz appeals upon the judgment-roll alone, claiming the evidence is insufficient to support the findings and con-

clusions of law. We are thus limited in our examination to the judgment-roll, which contains a copy of the agreement entered into between the parties and the findings and conclusions of law based thereon.

The first question is whether the agreement thus presented appears upon its face to be ambiguous or uncertain in its terms.

Plaintiff in her complaint sets forth an interpretation of the contract in accordance with her understanding thereof to the effect that it was therein agreed that defendants would make their own arrangements with the subtenants and would not hold plaintiff responsible in any manner for failure or nonperformance of said leases, or for any claim that might be made by the lessees, and would indemnify and hold the seller harmless for any failure or nonperformance of the said leases, and in the event any of the subtenants would bring action to enforce his lease defendants would defend such action and would pay any judgment and all expenses connected therewith. Defendants denied that by the terms of the contract they agreed in writing, or at all, to indemnify the seller but admitted that "In the event any of the tenants in the said property other than George Manoles, brings action to enforce their contract the purchaser shall defend such action and are to pay all costs connected therewith." Upon the issues thus presented the trial court found in accordance with the allegations of the complaint. We are in accord with the trial court that the agreement was not so plain and unambiguous as to speak for itself unaided by extrinsic evidence, and this appeal being on the judgment-roll alone we must presume the evidence presented fully supported the findings of the court and was competent to establish the allegations of the complaint. (*Brett* v. *Vanomar Producers*, 45 Cal. App. 286 [187 Pac. 758] ; *Crowther* v. *Metalite Manufacturing Co.,* 133 Cal. App. 452 [24 Pac. (2d) 551] ; *Klopputh* v. *McCord*, 211 Cal. 734 [296 Pac. 882] ; *Euless* v. *Westphal*, 71 Cal. App. 611 [235 Pac. 742].)

Whenever the meaning of a word in a contract is doubtful a finding of the trial court as to what the parties intended thereby and what the word means is a pure finding of fact and binding on this court. (*First Nat. Bank* v.

*Bowers,* 141 Cal. 253 [74 Pac. 856]; *Slama Tire Protector Co.* v. *Richie,* 31 Cal. App. 555 [161 Pac. 25].)

Appellants cite many authorities in opposition to the conclusions of the court but they are all based upon the fact that in the absence of ambiguity in a written instrument parol evidence is not admissible, but it is apparent that ambiguity did exist in the agreement before the court. In view of the fact that the building had been demolished at the time of the execution of the agreement it was necessary to ascertain what the parties meant by "tenant", what was contemplated by the use of the word "arrangements"; and the scope of the word "expenses"; also appellants claim the language "to enforce their lease" means to specifically enforce the same while it is pointed out by respondent the only action that would lie against respondent would be an action for damages, she being out of possession and the premises demolished at the time of the execution of the contract, and the only action that could be maintained against appellants would be an action for possession, in which case the agreement need not have provided that appellants would defend the same.

It is quite apparent that "to enforce their lease" was not intended to mean "specifically enforce their lease". Neither party to this agreement could limit a tenant to an action for specific performance rather than to an action for damages.

The obvious purport of the agreement was that appellants should make such arrangements as they deemed advisable with the tenants, either in the way of giving possession of part of the premises in the new building or by payment of money damages in lieu thereof. The entire management and control of the property and all negotiations with the tenants after the transfer of the property rested entirely with appellants and the burden rested upon them to satisfy the tenants if possible, and they were, in default thereof, to defend any action for damages which might result and to pay all the costs and expenses for damages resulting therefrom.

We find no error in the action of the trial court, and the judgment is therefore affirmed.

Plummer, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 28, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 26, 1934.