[Civ. No. 25711. Second Dist., Div. Three. Sept. 7, 1962.]

LEWIS FOOD COMPANY, Plaintiff and Appellant, v. FIREMAN'S FUND INSURANCE COMPANY, Defendant and Respondent.

Jerome Weber for Plaintiff and Appellant.

Hindman & Davis and E. Eugene Davis for Defendant and Respondent.

FORD, J.—The defendant insurance company issued to the plaintiff a policy of insurance in the amount of $150,000 which was in part as follows (the typewritten portion thereof being indicated by the use of italics): "1. The conditions of this policy are that if the building(s) or structure(s) or machinery or equipment *and/or raw stock excluding packaged sheet steel* . . . on premises situated *No. 801 and 817 East 18th Street Los Angeles, California* and occupied as *food manufacturing plant* be destroyed or damaged by the perils insured against occurring during the term of this policy so as to necessitate a total or partial suspension of business, this Company shall be liable under this policy, subject to the following conditions and limitations, for the actual loss sustained by reason of such suspension, consisting of: Item I. The net profits of the business which is thereby prevented; Item II. Fixed charges and expenses, only to the extent to which

they would have been earned had no loss occurred, as follows: . . ." The policy contained a contribution clause, part of which was in the following language: "This Company shall be liable, in the event of loss, for no greater proportion of the loss than the amount hereby covered bears to *one hundred* per cent (*100%*) of the total of the net profits (Item I) and charges and expenses (as specified in Item II) which would have been earned (had no loss occurred) during the period of twelve (12) months immediately following date of destruction or damage of property herein described . . . ."

The provision of the policy which was entitled "APPRAISAL" was in the following language: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

The complaint filed by the plaintiff, in addition to pleading the contents of the policy, alleged that on December 20, 1954, a portion of the described property "was greatly damaged and business interruption ensued," that the loss of profits was in the amount of $102,577.37, that notice of the loss and proof of the loss were given as required by the terms of the policy, that the parties were unable to agree as to the amount of the loss, and that that question was submitted to appraisers and an umpire for decision. It was further alleged that the appraiser chosen by the defendant and the umpire "estimated and appraised the cash value and amount of said loss in violation of the terms of the Agreement for Submission to Appraisers and the terms of said policy of insurance, by including properties not covered by the terms

of the insurance contract'' and that such action substantially prejudiced the rights of the plaintiff in that the appraiser and the umpire exceeded their authority.

A copy of the agreement for submission to appraisers and a copy of the award were attached to the complaint and incorporated therein by reference. Part of the agreement for submission was as follows: ''It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of cash value and loss and (or) damage ONLY, to the property hereinafter described, and shall not determine, waive or invalidate any other right or rights of either party to this agreement.'' No description of the property was stated other than as is contained in the following language (the typewritten portion being indicated by the use of italics) : ''The property on which the cash value and the loss (or) damage is to be determined is as follows, to-wit: *Business interruption as insured under Fireman's Fund Insurance Company's policy number A480862.*''

The award was signed by the appraiser chosen by the defendant and by the umpire. Therein it was stated ( the typewritten portion being indicated by the use of italics) : ''We have carefully examined the premises and remains of the property hereinbefore specified [the only specification being that found in the agreement for submission to appraisers], in accordance with the foregoing appointment, and have determined the cash value to be *Two Million Three Hundred Forty-One Thousand Two Hundred Fifty-One ($2,341,251.00)* Dollars, and the loss and damage to be *One Hundred Twenty-Seven Thousand Five Hundred Thirty-Five and 79/100ths ($127,535.79)* Dollars.''[1]

---

[1] The significance of the award can be better understood if reference is made at this point to evidence received at the trial. In the building at 801 East 18th Street were the operations of the bakery portion of the plaintiff's pet food business. The products there produced consisted of ''dry'' pet food as distinguished from canned foods. The fire which occurred in that building caused an interruption of that part of the plaintiff's business. But the larger part of the business, which was the production of canned pet food, continued without interruption. The business address of the plaintiff was 817 East 18th Street; the entrance to its offices was in the structure there located. That building contained refrigeration facilities for fresh meats and storage space for grains and cereals used in the preparation of canned pet food. One meat grinder was also located there. In several adjacent structures, having separate street numbers, some of the operations connected with the canned food business were conducted.

The award was made on the basis that, contrary to the plaintiff's position, the bakery portion of the business could not be isolated from the entire operations so as to limit the terms of the policy to the bakery

The defendant's position was that by reason of the award its liability could not exceed the amount of $8,171, which represented the proportion of the loss (set forth in the award as $127,535.79) which the named amount of insurance ($150,000) bore to "the value of the subject of insurance" (set forth in the award as $2,341,251).[2]

When the matter came on for trial, a lengthy discussion ensued as to the sufficiency of the complaint. The trial court appears to have been of the opinion that the complaint did not state a cause of action because the plaintiff had sued upon the insurance contract whereas his proper remedy was to prosecute a proceeding to vacate the award under the then existing provisions of the Code of Civil Procedure relating to the subject of arbitration. (Code Civ. Proc., §§ 1280-1293.)[3] However, the plaintiff was permitted to file an amended complaint. The only change of substance in the plaintiff's pleading, except for an increase in the amount of the loss claimed to have been suffered, was set forth in the following language: "That said appraisers and umpire exceeded their powers under said agreement for submission in that they included in the declaration of appraisers and award of appraisers properties not covered by the terms of the insurance contract or under said agreement for submission to appraisers and that by reason of said inclusion of properties not covered by the terms of the insurance contract or under the agreement for submission to

operations alone. Rather, the loss was determined by taking into account all of the pet food operations of the plaintiff on the whole 18th Street premises. One of the appraisers testified as follows: "The $2,341,251 figure is the sum total of the net profits and the fixed and continuing expenses that would have been incurred for the period immediately following the fire consisting of 12 calendar months. . . . We determined with Mr. Lewis what his sales in the dry department [bakery portion of the business] would have been if there had been no loss, subtracted from the actual sales and gave him credit for loss of sales between the two and calculated our loss on that bases [basis]. We have two types of calculations: one for the loss and one for the value."

[2] If the calculations had been restricted to the bakery department alone, the value would have been stated as $211,190 instead of $2,341,251 and the formula for determining the amount which the plaintiff was entitled to recover under the policy would have been as follows:

$$\frac{150,000}{211,190} \times \$127,535.$$

[3] Section 1288 then provided in part: "In either of the following cases the superior court of the county . . . in which said arbitration was had must make an order vacating the award, upon the application of any party to the arbitration: . . . (d) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made."

appraisers as aforesaid, a correct, mutual, definite and final award upon the subject matter of the agreement for submission to appraisers was not thereby made.'' The trial judge stated that he considered the matter before him to be in the nature of ''a motion to determine whether the appraisers exceeded the authority granted to them in the contract'' and that if it was determined that they did not, ''then whatever they did stands.''

In its findings of fact[4] the court found that the appraiser and the umpire who signed the award ''appraised and returned their award in strict compliance with the terms and conditions of the Agreement for Submission to Appraisers and within the terms and conditions of the insurance contract,'' that they did not exceed their powers under the agreement for submission to appraisers, that they did not include in the award ''properties not covered by the insurance contract'' or the agreement for submission, and that a ''correct mutual, definite and final award'' was made. It was further found that ''the premises situated at 801 and 817 East 18th Street, Los Angeles, California, and occupied as a food manufacturing plant, was a single integrated business operated as a whole and that the aforesaid policy insured said business as a whole and . . . that the appraiser and umpire . . . did not include properties not covered by the terms of the insurance policy in determining the cash value of the property insured to be the net profits of the entire business operated at said location and the fixed charges and expenses . . . .'' Judgment was entered in favor of the plaintiff, but only for the amount of $8,171.

One of the questions on this appeal is whether the plaintiff was entitled to pursue an action on the policy instead of being limited to an attack upon the validity of the award. A policy of insurance may, of course, contain a provision for arbitration under which questions of law and fact are to be determined by that process rather than by the usual resort to the judicial process. (*Government Employees Ins. Co.* v. *Brunner*, 191 Cal.App.2d 334 [12 Cal.Rptr. 547].) By the provision in the policy presently before the court is not of that broad nature. An agreement for an appraisement is to be distinguished from an agreement to submit a controversy to arbitration. (See *Lucas* v. *Quigley Motor Co.*, 191 Cal.App.2d

---

[4]After the trial judge announced that he found that the appraiser and umpire did not exceed their authority, he stated in part: ''. . . this is just in the form of a motion, but so there won't be any question, prepare findings and conclusions of law. . . . Findings and conclusion and an order, which could be a judgment. . , ,''

152, 154-155 [12 Cal.Rptr. 442]; *In re Delmar Box Co.,* 309 N.Y. 60 [127 N.E.2d 808]; 5 Cal.Jur.2d, Arbitration and Award, § 3; 3 Am.Jur., Arbitration and Award, § 3.) After the trial in this case, *Hughes* v. *Potomac Ins. Co.,* 199 Cal. App.2d 239 [18 Cal.Rptr. 650], was decided. That was an action against an insurer under a policy which covered all risks of physical loss of, and damage to, real and personal property. A landslide occurred and the plaintiffs claimed that they had thereby been caused to suffer a loss covered by the policy. The defendant denied liability. Pursuant to the terms of the policy, however, the plaintiffs and the defendant appointed appraisers to determine the amount of the loss. The appraisal resulted in a determination of the plaintiffs' loss and damage in particular amounts with respect to specific items. The plaintiffs' action thereafter brought was upon the policy and a judgment was rendered in their favor. With respect to the authority of the appraisers under the policy, the court said (199 Cal.App.2d at page 253): "Appellant also asserts that the appraisers' award of $50 for loss and damage to the 'dwelling' must be controlling. This position is untenable. The appraisers found that the cost of a retaining wall and fill was $19,000. The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. *It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.* The mere fact that they apparently considered the 'dwelling' to be limited to the house and attached garage did not deprive the court of its right to interpret the policy in a different manner. (See *Feinbloom* v. *Camden Fire Ins. Assn.* (1959) 54 N.J. Super. 541 [149 A.2d 616, 620].)" (Emphasis added.)

In the *Feinbloom* case cited in the preceding quotation, the court said (149 A.2d at p. 620): "The appraisal provided for in the policy does not contemplate the submission to the appraisers of questions of law. [Citations.] They are permitted only to 'appraise the loss, stating separately actual cash value and loss to each item.'" (See also *Hawkinson Tread Tire Service Co.* v. *Indiana Lumbermens Mut. Ins. Co.,* 362 Mo. 823 [245 S.W.2d 24, 28]; *Mork* v. *Eureka-Security Fire & Marine Ins. Co.,* 230 Minn. 382 [42 N.W.2d 33, 35, 28 A.L.R. 2d 987]; *Munn* v. *National Fire Ins. Co. of Hartford,* 237 Miss. 641 [115 So.2d 54, 56].)

Under the applicable law the plaintiff's cause of action was on the policy and not on the award. (Cf. *Lewis*

*Food Co. of Cal.* v. *Milwaukee Ins. Co.,* 257 F.2d 525.) With respect to that cause of action the primary issue to be determined, in view of the respective contentions of the parties, was the nature of the coverage provided by the policy. If in the superior court the plaintiff was not afforded a judicial determination of that issue and thereby suffered prejudice, the judgment must be reversed.

In support of its contention that the policy covered only loss due to the interruption of its bakery business and that the provision of the policy as to contribution was applicable only to the net profits and the charges and expenses of that part of the plaintiff's operations, the plaintiff offered the testimony of Mr. Lewis, the president of the plaintiff corporation. He testified at some length as to the nature of the plaintiff's business and the manner in which it was conducted on the premises on 18th Street. Primarily, the plaintiff was engaged in the manufacturing of food for dogs and cats. Before 1953, the products were marketed in cans. The building at 801 East 18th Street was erected in 1953 to house a bakery for the production of "dry" pet food. It was thereafter used exclusively for that purpose and the utility meters were separate from those for the utilities pertaining to the canning operations. The policy which was before the court was obtained at approximately the time the operation of the bakery began. The agent of the defendant suggested that the plaintiff obtain business interruption insurance on all the business, but Mr. Lewis told him that he did not believe that he needed that coverage. He "merely wanted to cover a new venture, a new program, a new product, since [the plaintiff was] . . . expending a considerable introduction cost in producing this plant as well as building the plant." Mr. Lewis told the agent that he did not believe that in the rest of the plant a hazard existed of the nature of that in the bakery building arising from the presence of a "long oven with gas fired from end to end, which was one hundred twenty or thirty feet long." Mr. Lewis discussed with the agent the amount of the plaintiff's current canned food sales and took a percentage thereof as representative of what he anticipated the sales of baked pet food would be and, consequently, what the amount of necessary coverage appeared to be. After the fire occurred, there was no further production and there were no sales in the bakery department until the plant therefor was rebuilt and reequipped.

In the course of the cross-examination of Mr. Lewis, the

following testimony was given: "Q. Now, you operated that business as an integrated whole, did you not, the entire plant? . . . You operated different departments? A. We actually operated four distinctive, different types of businesses here, . . . Then the canning operation for the canned food. Then over here we operated the bakery for manufacturing the dry dog food. . . ." He further testified: "A. Yes, we did keep separate records . . . on the bakery. We retain here our own pay roll department, the purchases for that department so as to maintain accurate cost [sic] of the cost of operation of this plant versus the other plant, because there were two different cost problems and different purchasing problems."

 Since the language of the policy lent itself to the construction for which the plaintiff contended, extrinsic evidence bearing upon the meaning of the contract was admissible. The applicable law is succinctly expressed in *Reid* v. *Overland Machined Products*, 55 Cal.2d 203 [10 Cal.Rptr. 819, 359 P.2d 251], at page 210, as follows: "When the language used in the contract is fairly susceptible to the construction claimed by one of the parties, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining its true meaning." But the record affords no assurance that the trial court gave consideration to the evidence of Mr. Lewis relating to that subject. When his testimony as to the facts and circumstances attending the issuance of the policy was offered, the court stated: ". . . the court isn't saying right now there is an ambiguity but only admitting it . . . if there be an ambiguity." However, in expressing his views at the end of the trial, the trial judge apparently limited his consideration to the face of the contract. He stated in part as follows: "What was the business? The business is as stated in the policy and occupied as 'Food manufacturing plant.' And that is all that they [the appraisers] could decide. . . . It is the opinion of this court that that is exactly what was done in this case. . . . Now, what was the business that was either partially or totally suspended? It was 'food manufacturing plant,' not limited to dry or not limited to canned, but the business of 'food manufacturing plant' was partially suspended by virtue of a fire in one of the two buildings covered, and that was the matter that the appraisers and umpire had before them, and that is all, to a limit of $150,000. That is exactly what was done. If there was any intent to limit it, they would have said 'limited to the dry goods' or 'limited to dry dog food' or 'package goods' or

something, but it isn't. It is 'food manufacturing plant.' . . . [B]ut the idea to limit it only to the business that was done in 801 is nowhere stated here.''

If, as appears to have been the case, the trial judge, although he did not refuse to receive extrinsic evidence, considered the policy to be of such a nature that it could and must be construed by a consideration of its terms alone, prejudicial error occurred. (See *Nuland* v. *Pruyn,* 99 Cal.App.2d 603, 615-616 [222 P.2d 261]; *Pedersen* v. *Fiksdal,* 185 Cal.App.2d 30, 36 [7 Cal.Rptr. 874].) As stated in *Smith* v. *Fetterhoff,* 140 Cal.App.2d 471 [295 P.2d 474], at page 473: ''While it is ordinarily true, as argued by respondent, that an appellate court need not concern itself with the reasons which impelled a trial court to act, as it is the judicial action as shown in the findings and judgment and not the judicial reasoning or argument which is the subject of review (*DeCou* v. *Howell,* 190 Cal. 741 [214 P. 444]), yet where as in the instant case the trial court refused to consider and weigh evidence upon the erroneous theory that it could not be considered, an appellate court is not justified in affirming the judgment upon the ground that the evidence supports the judgment.'' (See also *People* v. *Gorshen,* 51 Cal.2d 716, 734-735 [336 P.2d 492].)

Moreover, even if the trial court considered all of the pertinent extrinsic evidence, there was no finding of fact as to what the meaning of the contract of business interruption insurance was with respect to the matter of coverage. Such a finding was not implicit in the finding that ''the premises situated at 801 and 817 East 18th Street, Los Angeles, California, and occupied as a food manufacturing plant, was a single integrated business operated as a whole,'' because a part of an integrated business, such as the operations of a department thereof, could conceivably be the exclusive subject of a policy of business interruption insurance. Such a contract could logically be sought where the conduct of a particular part of a business involved a greater hazard than was present with respect to the rest of the business. Moreover, the language that ''the aforesaid policy insured said business as a whole'' did not embody a finding of fact but constituted a conclusion of law which was not supported by the facts found and must be disregarded. (See *Hunter* v. *Sparling,* 87 Cal. App.2d 711, 721 [197 P.2d 807]; *Wayt* v. *Patee,* 205 Cal. 46, 53-54 [269 P. 660].)

The question as to the intent of the parties to an

ambiguous agreement that does not clearly express their intention is one of fact. (*Faus* v. *Pacific Elec. Ry. Co.*, 187 Cal. App.2d 563, 570 [9 Cal.Rptr. 697].)　　　While the pleadings did not expressly present that issue, it was at the core of the primary problem presented by the controversy between the parties; a finding of fact with respect thereto was necessary to a proper disposition of the case. (Cf. *Gallatin* v. *Markowitz*, 139 Cal.App. 10, 13 [33 P.2d 424].)　　　As stated in *Sun-Maid Raisin Growers* v. *Papazian*, 74 Cal.App. 231 [240 P. 47], at page 238: ''The court should have been asked to and should have made a finding on the issues brought forward by the parties, during the course of the trial, which were material to the main issue raised by the written pleadings. [Citation.] The trial court having failed to make a finding on that material issue, such failure constitutes reversible error.''

Since there has been no judicial determination of the basic issue in the controversy between the parties in accordance with the applicable law, the judgment cannot be sustained.

The judgment is reversed.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied October 3, 1962, and respondent's petition for a hearing by the Supreme Court was denied October 31, 1962.