245 F.2d 837
 Robert F. ELLISON and Cleo A. (Ellison) Walker, Appellants,
v.
William E. FRANK, United States District Director of Internal Revenue for the District of Washington and Territory of Alaska, Appellee.
 No. 15318.
 United States Court of Appeals Ninth Circuit.
 May 27, 1957.
 
 John L. Flynn, Philip A. Levin, Portland, Or., Hugh B. Collins, Medford, Or., for appellants.
 Charles K. Rice, Asst. Atty. Gen., S. Dee Hanson, Hilbert P. Zarky, Walter A. Gelles, Attys., Department of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Guy A. B. Dovell, Asst. U. S. Atty., Tacoma, Wash., for appellee.
 Before BONE, LEMMON and HAMLEY, Circuit Judges.
 BONE, Circuit Judge.
 
 
 1
 Appellants (husband and wife at times here material) brought this action for refund of an alleged overpayment of Federal individual income taxes paid to appellee for the year 1949. The lower court entered final judgment for appellee and this appeal is from that judgment.
 
 
 2
 In 1947, the United States, through the Forest Service of the Department of Agriculture, offered to sell the timber on a tract of land on the Green Forks River under a "pay-as-cut" contract which provided for payment for the timber as it was cut. The Forest Service awarded the timber and the contract right to cut that timber to Northwest Door Company (hereafter "Northwest") by Contract Form 202, No. A6 fs-16060. By its terms, Northwest would purchase, cut and pay for the timber from the Green Forks tract. Title to the timber remained in the United States until after the timber had been "felled, scaled, paid for, etc.". The court also found that title then passed to Northwest which was "financially liable to the United States for performance of the contract."
 
 
 3
 Since Northwest wanted the timber for its mill operations rather than for any "logging" profit, it contracted with Robert F. Ellison for Ellison to do the logging. Ellison performed the logging operation. The contract had extended over a period in excess of six months when Northwest made payments to appellants. Appellants reported the excess of these payments over their costs on their 1949 income tax return as capital gain from the cutting of timber which they claimed as owners or to have had a "contract right" to cut for use in their own business or for sale.
 
 
 4
 The Commissioner of Internal Revenue determined that appellants' income was taxable as ordinary income for the reason that Ellison (the contracting party in this case) did not own the timber, nor was he buying it under a contract right to cut the timber, nor did he cut it for sale or for use in his own business.
 
 
 5
 The lower court also found that the appellants "* * * did not at any time own or have a contract right to cut the Green Forks timber, nor did they cut said timber for use in their own business or for resale * * *." The court concluded: "A logger who has or obtains no right, title or interest in the timber which he cuts may not elect to report the gain from his logging operations as capital gain under Sections 117(k) (1) or 117(k) (2) of the Internal Revenue Code of 1939, 26 U.S.C. Sec. 117 (1952 ed.)." The court accordingly denied recovery on plaintiffs' complaint.
 
 
 6
 Appellants' two specifications of error assert that the court erred (1) in holding that the contract between Ellison and Northwest was self-limiting and represented the entire transaction between these parties, and that the "transactions actually consummated between these parties could not be shown by other evidence," (2) in finding that Ellison did not own "equitable title" to the logs he harvested and that Ellison had no "proprietary interest" in the timber, and that the logs removed from the Green Forks tract "were not cut and sold in the course of Ellison's trade or business."
 
 
 7
 It is appellants' argument that Ellison was the "equitable owner" of a contract right to cut the timber and had "harvested" and sold it in the course of his business; that evidence introduced at the trial showed that Northwest held the Forest Service contract for Ellison's benefit as security for performance by Ellison, and that the capital gain benefits under 26 U.S.C.A. (I.R.C.1939) § 117(k) are available to Ellison as an equitable owner of the contract right to cut the timber, even though "naked legal title" was held by another.
 
 
 8
 We are persuaded that the judgment of the lower court must be affirmed. It appears to have received all of the evidence offered, including parol evidence, as to the intent and purpose of the written contract between Ellison and Northwest. Appellants sought to prove that though legal title was in Northwest, Ellison was really the equitable owner of the timber. After hearing this evidence, the court found that the written contract contained the understanding and agreement of these parties, and "meant what it said." It is not claimed that this contract agreement was ever modified by any subsequent agreement.
 
 
 9
 Whether the oral evidence as to the meaning of the Ellison-Northwest contract should have been admitted or excluded we do not decide. As trier of the facts, the credibility of witnesses and the weight to be given their testimony is a matter to be determined by the trial judge, and his findings must be sustained if supported by any substantial evidence. Fed.Rules Civ.Proc., Rule 52 (a), 28 U.S.C.A. Ruud v. American Packing & Provision Co., 9 Cir., 1949, 177 F.2d 538; Overman v. Loesser, 9 Cir., 1953, 205 F.2d 521, certiorari denied, 1953, 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407. Appellants concede that legal title was in Northwest and that appellants' claim to equitable title must rest on the parol testimony received. A reading of the entire record does not induce the belief that it was error to formally find that the written contract "reflected the intentions of the parties precisely."
 
 
 10
 It has frequently been said in opinions that if a trial judge sitting without a jury decides a fact issue on written evidence alone, the Court of Appeals may disregard the trial judge's finding since his evaluation of credibility is not involved. Perry v. Perry, 1951, 88 U.S.App.D.C. 337, 190 F.2d 601; Orvis v. Higgins, 1950, 2 Cir., 180 F.2d 537, certiorari denied, 1950, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595. Even should this rule be applicable to this case,[1] appellants are not aided, as we believe the district court has correctly viewed the contract which appears as an exhibit in this case.
 
 
 11
 We agree with the lower court when it stated in open court that "* * the contract provides in the most unmistakable terms, reiterated and emphatically stated that under no circumstances whatever is Ellison to become the owner of the logs or to have any right, title or interest therein."[2] Since appellants had no right, title or interest in the timber, and had no right to sell it, or to use it in their business, they may not receive the capital gain treatment under 26 U.S. C.A. (I.R.C.1939) § 117(k). Carlen v. Commissioner, 9 Cir., 1955, 220 F.2d 338. We also agree with the lower court that the fact that Ellison was to be paid the Columbia River market price for the logs and that he thus apparently assumed the economic risk of the logging operation, does not alter the fact that Ellison had contracted to perform "logging services" for Northwest, and that he was to be paid for his services only. Similarly, we consider it immaterial that Northwest did not claim capital gains treatment for the timber involved here.[3]
 
 
 12
 Appellants have relied heavily on Wilson v. Commissioner, 1956, 26 T.C. 474, as a basis for their claim for tax relief under their claim of "equitable ownership" of the timber here involved. Under the testimony and evidence in the instant case we cannot agree that the Wilson case should control the outcome here. The Wilson case does not benefit appellants since in it the court specifically found as a fact that a partnership, of which petitioners Wilson were members, was the "owner in equity" of the timber. But in the present case the court found that appellants have no right or title to nor interest in the timber.
 
 
 13
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Finding 9 would indicate that the District Judge considered the oral evidence in making his findings: "The foregoing contract was drafted after a full exploration of the situation by all concerned, and reflected the intentions of the parties precisely. Its provisions are clear and unambiguous. If the contract be subject to parol construction, then the evidence fully shows that the contract meant what it said."
 
 
 [2]
 Pertinent portions of the contract between Northwest and Ellison read as follows:
 "1. The Logger does hereby agree to fall, buck, yard, load and transport to navigable water in the Columbia River all of the timber * * *.
 * * * * *
 "4. * * * The Logger further agrees that he will perform said logging services in a good and workmanlike manner pursuant to the customs and practices of the Northwest Logging Industry * * *.
 "5. It is hereby agreed between all of the parties hereto that said logs, timber and forest products shall be and remain the joint property of the Parties of the First Part [Northwest] herein mentioned and that the same shall be divided or otherwise disposed of in accordance with agreement between the Parties of the First Part, and that the Party of the Second Part [Ellison] shall not have any right, title or interest therein other than the right to receive his compensation herein agreed to be paid.
 "6. The Parties of the First Part agree to pay to the Logger for his services in logging and delivering said timber, logs and forest products to the Columbia River at the point above designated * * *."
 
 
 [3]
 Appellants cite other facts in evidence and draw inferences from them to support the claim of equitable ownership. Appellee is equally adept at citing facts in evidence and drawing inferences to support the claim that appellants acquired no right, title or interest in the timber. The lower court had to resolve these conflicting claims and we cannot conclude that its findings on these issues are clearly erroneous. In oral argument here, appellants conceded that their claim of "equitable ownership" rests on the effect of parol testimony; that if the claim of equitable ownership falls, then the doctrine of our Carlen case "favors appellee."