LEWIS FOOD COMPANY OF CALIFOR-
NIA, a corporation, Appellant,

v.

MILWAUKEE INSURANCE COMPANY,
a corporation, Appellee.

No. 15500.

United States Court of Appeals
Ninth Circuit.

June 30, 1958.

Baird & Holley, G. A. Sheppard, Los
Angeles, Cal., for appellant.

Hindman & Davis, E. Eugene Davis,
Sr., Los Angeles, Cal., for appellee.

Before FEE, CHAMBERS and
BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an action on two insurance
policies by an insured against an in-
surer, based on their diversity of citizen-
ship. (28 U.S.C. § 1332.)

A fire occurred on December 20, 1954,
on and in the Los Angeles premises
occupied by appellant. Judgment was
recovered on the first policy (No. 12073,
insuring against loss of damage by fire
to stock and merchandise) in the sum
of $56,309.66, without interest or costs,
and on the second policy (No. 11944, in-
suring against loss of equipment located
on those premises) in the sum of $36,-
223.66, without interest or costs—or a
total of $92,533.32. Appellee was award-
ed its costs, taxed at $359.72. Appellant,
dissatisfied with the judgment, appeals,
and relies on five alleged errors:

(1) The court erred in holding the
appraisers appointed acted within, and
did not exceed their authority.

(2) The court erred in holding that
the policies covered all goods and equip-
ment owned by appellant, and that cover-
age was not limited to the street number
addresses listed on the policies.

(3) The court erred in holding that
certain goods and equipment stored else-
where were not considered by the ap-
praisers.

(4)  The court erred in holding buildings described by street numbers and "designating areas covered by the policies," had no meaning or effect.

(5)  The court erred in not allowing appellant interest on the sums awarded it.

## I.  The Conflicting Evidence

Appellant apparently fails to realize that the first four alleged errors relate to findings made by the trial court which were based on disputed questions of fact. Appellant repeatedly refers to evidence which, if believed, would substantiate its position. It emphasizes that some of this testimony favorable to it was uncontradicted. But neither of these factors is enough to justify a reversal here. In its constant reference to the favorable testimony, it overlooks and nowhere refers to the unfavorable or contradictory testimony in the record. Nowhere does appellant attempt to point out a total lack of evidence to support any finding of fact made by the trial court.

We are faced with the elementary rule of law embodied in our Court rules that the findings of the trial court are presumptively correct and will not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C. Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 1949, 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672. That same rule cautions us, as an appellate court, that due regard shall be given to the opportunity resting with the trial court to judge of the credibility of the witnesses and to appraise the significance of conflicting testimony. Such admonition is particularly apposite here for two reasons. First, the trial court made a personal visit to the insured's premises to observe the physical plant; to note how the dog-food processing plant operated; and, after viewing it, stated:

"* * *  I am holding as a matter of fact that this policy covers the entire plant [and not merely the premises designated by street numbers in the policy]. I don't think there is any way you can get away from that." [Tr. p. 444.]

The trial judge then gave his reasons for such finding of fact, including the forceful observation that there existed conveyor belts extending through the walls of some buildings which "connect[ed] the entire plant together." [1]

Secondly, the matters urged upon us as improper findings manifestly depend upon conflicting testimony. For example, appellant strenuously urges that the amount found by the court as the value of the property insured on the 30th day of November, 1954, $346,422.66,[2] must have been based upon an original figure of $418,509.14 for stock on hand, less $72,000 worth of stock stored at the El Monte plant, and did not take into consideration the approximately $187,000 in stock allegedly stored outside the state of California which would have resulted in insurable stock at the plant worth approximately $159,000. The court was required to accept this figure, says appellant, and it was error not to do so. Yet defendant introduced testimony that two certified public accountants had determined the actual value of the stock as of November 30, 1954 at the various Los Angeles buildings covered by the policy, to be (after deducting the El Monte stock) $325,022.25. They did not take the Honeyville, Utah stock of $21,000 into consideration originally, nor the lump storage of $2,964, nor the barley in Utah, nor any goods in outside locations except El Monte. The defendant relied on the testimony of public insurance adjuster Greenspan, who had determined the actual cash value of the stock of goods on hand on November 30, 1954 as $148,509.14. This did not include anything outside the plant. Despite this testimony in the record, which was based

1.  Statement made by the court below: "Originally those buildings were probably separate buildings but now they have all been united into one plant and I think under the terms of the policy everything in that plant is covered by the policy." [Tr. p. 446.]

2.  Finding III.

on an auditor's examination of appellant's available books, ledgers and records (some of which had been destroyed in the fire), appellant attacks the witnesses' conclusions as erroneous because those same books, ledgers and records showed various amounts of stock stored in Utah and at the Federal Warehouse in Los Angeles.

■■ We would be the first to agree that the record in this case is in some areas confusing and contradictory. The trial court's patience was near the break-ing point (Tr. pp. 352–357). Yet he patiently heard all the testimony, then re-opened the case to hear further testimony from appellant which had been originally ruled out. He physically viewed the premises. After study, the court came to a conclusion. Having had the opportunity to observe the various witnesses, he concluded that appellant "had failed to establish that any improper matters were considered by the appraisers." The memorandum opinion of the trial court clearly shows the basis for this factual determination.[3]

3. "This action is brought to recover damages and is based upon two separate policies of insurance covering plaintiff's property which was partially destroyed by fire. The parties were unable to agree on the amount due under the policies, and pursuant to the terms of the contract submitted the controversy to appraisers, who selected an umpire, and returned an award. Defendant insurance company tendered this amount, which was refused by plaintiff hence this litigation. This is the usual case where a plaintiff under reporting policies fails to make accurate reports and then in case of a loss finds itself without full protection.

"The policies contained identical provisions for submission to appraisers of controversies over amounts due under the policies:

" 'Appraisal. In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; * * *. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss * * *.'

"The first policy contained a full-reporting or so-called 'honesty' clause, which limits recovery to that proportion of the loss which the last reported value bears to the actual cash value of the property covered. The second policy contained an average clause which limited recovery to the proportion of the loss which the face value of the policy bears to the actual value of the property at time of loss.

"The controversy over both policies is the same and relates solely to the accuracy of the appraisers' estimate of the actual cash value of the property covered at the time of loss. Plaintiff asserts that the figure is substantially too high, thus resulting in a reduced recovery under the above clauses. Having heard the testimony of the appraisers, I have concluded and am satisfied that they performed their duties with great care and deliberation.

"Plaintiff contends that the award should be set aside on the grounds that the appraisers exceeded the limits of the submission agreement by including in the actual cash value property not covered by the insurance contract.

"The premises involved are a dog food cannery. The policy by its terms covers '801–805–817 E. 18th St. and 1701 Griffith St., Los Angeles, California.' The mailing address and main entrance are 817 E. 18th St. and the premises are usually known as 817 E. 18th St. From the outside the structure appears to be one large building, and is used as such and each unit is connected by a conveyor belt. On the inside the building contains several semi-separate units, which have been assigned by the city different street numbers, including some not listed in the policy. The appraisers considered all the property in the building in arriving at the actual cash value. Plaintiff contends that only the property located in the units whose addresses appear on the policy should have been considered.

"The court, having viewed the premises and having heard testimony as to the operation of the plant, is of the opinion that the entire plant is one integrated unit. This is admitted by plaintiff. The policies in question covered the

The appellee was the prevailing party below, and hence we must take that view of the evidence most favorable to it, just as we must take the view most favorable to the appellant in interpreting the insurance policies involved. Appellee is entitled to the benefit of all favorable inferences from the facts proved relative to the amount of the property insured. If, when so viewed, there was substantial evidence to sustain the findings then the judgment may not be reversed by this Court unless against the clear weight of the evidence, or unless influenced by an erroneous view of the law. John Hancock Mut. Life Ins. Co. v. Cohen, 9 Cir., 1958, 254 F.2d 417; United States v. First Trust Co. of St. Paul, 8 Cir., 1958, 251 F.2d 686; Ellison v. Frank, 9 Cir., 1957, 245 F.2d 837; Vidales v. Brownell, 9 Cir., 1954, 217 F.2d 136. There was much evidence to support the factual

conclusions of the trial court, and we see no reason to disturb it.

## II. Policy Provisions and Findings

The policy involving the loss of goods and merchandise contained a "Value Reporting Clause"[4] and "Full Reporting Clause."[5] The last report of value made by appellant in accordance with said contract provision was made on December 18, 1954, reporting the values of the property insured under said policy as of November 30, 1954 to be $132,000. The court found the value of the property specified in the policy as insured, on that same date of November 30, 1954, to be $346,442.66 (Finding III). The fire damage was $187,228.59 (Finding VI). The formula used by the court to determine what the insurer was obligated to pay, is found in Finding VII;

"That by reason of the provisions of the said policy above quoted,

entire premises and not just the addresses listed on the policy. In fact, the street numbers encircled the entire plant. There was thus no error by the appraisers in fixing the actual cash value to include all property located throughout the building.

"Plaintiff's second attack on the award is that property located in certain outside warehouses was erroneously included in the actual cash value. It is true that such would not properly be includable in determining actual cash value under the terms of the policies. But plaintiff has failed to establish that any improper matters were considered by the appraisers. The rule is well settled that every reasonable intendment is in favor of an award made by appraisers who have acted pursuant to the terms of a clause in a policy such as is involved here. [Aetna Ins. Co. v. Hefferlin, 9 Cir., 260 F. 695; Lundblade v. Continental Ins. Co., D.C.Cal., 74 F.Supp. 795]. Plaintiff has failed to establish any facts which would justify this court in finding that the appraisers had violated the terms of the submission agreement. On the contrary, the evidence shows that nothing in the outside warehouses was considered by the appraisers in determining the actual cash value.

"It is hereby ordered that plaintiff recover the amount awarded by the appraisers in the sum of $92,533.33, which the parties agreed was in accordance with the formula set forth in the policies,

without interest, defendant to recover costs. Defendant will prepare findings in accordance with the rules of this court." [Tr. pp. 25–28.]

4. "Value Reporting Clause: (a) It is a condition of this policy that the insured shall report to this company on the last day of each calendar month of the policy term, the exact location of all property covered hereunder, the actual cash value of such property at each location and the amount of specific insurance in force at each location, all as of the last day of that month. However, a grace period of thirty (30) days shall be allowed for compilation and submission of such reports to this company. * * *." [Tr. pp. 30, 31.]

5. "Full Reporting Clause: Liability under this policy shall not in any case exceed that proportion of any loss hereunder (meaning the loss at the location involved after deducting the liability of specific insurance, if any) which the last value reported to this company prior to the loss, less the amount of specific insurance reported, covering identical property, if any, at the location where the loss occurs, bears to the actual cash value of the property hereinbefore described, less the amount of specific insurance covering identical property, if any, actually in force at that location at the time of such report." [Tr. p. 31.]

Plaintiff, by reason of said damage by fire, became entitled to recover from Defendant not to exceed that proportion of said loss or damage as the amount reported by Plaintiff to Defendant as the actual cash value of the property insured as of November 30th, 1954, to wit: $132,-000.00 bore to the actual cash value of the said property as of the date for said report, to wit:

$$\frac{\$132,000.00}{\$346,442.66} \text{ or } \frac{\$132,000.00}{\$346,442.66} \text{ of } \$187,228.59, \text{ or the sum of } \$71,359.76.''$$

Salvage was next considered in Finding VIII,[6] and credited in accordance with the policy provisions. The net amount so found due was found to have been promptly tendered by appellee to appellant.[7] These findings are not attacked by appellant, except for the last.

### III. The Failure to Award Interest

Appellant's fifth error relied upon is the failure of the trial court to award interest. The court failed to award interest because it found, as noted above, that the amount due appellant by

appellee had been timely tendered by appellee.

The parties stipulated that "tender was made as alleged in (defendant's) answer."[8] The answer recited a tender of $56,309.67 on the first cause of action[9] and $36,223.66 on the second.[10] These were the precise respective sums awarded to appellant totaling $92,533.32.

Appellant cites three cases in support of this point, none of which controls. Thus, Mutual Life Ins. Co. of New York v. Wells Fargo Bank, 9 Cir., 1936, 86 F.2d 585, 588, is not applicable, for there the tender was in a lesser amount than that ultimately found due. Appellant cites the case of Sanitary Farm Dairies v. Gammel, 8 Cir., 1952, 195 F.2d 106, for the general rule that when defendant attempts by pleading to prevent plaintiff from obtaining any recovery, the tender is not effective to stop interest. That valid rule is not here applicable, because defendant in answering both the first and second cause of action contained in plaintiff's complaint admitted there were due the sums found due (Tr. pp. 15, 16, 18) and tendered the same. In addition, appellee raised as a separate defense to the

6. "That after the fire above referred to, Plaintiff and Defendant jointly delivered certain of the damaged property to Underwriters Salvage Company to salvage for their joint account or account of whom it may concern, and Underwriters Salvage Company did salvage the same and returned a net salvage of $39,500.00 to the joint account of Plaintiff and Defendant. That from said salvage, Defendant was entitled to receive the sum of $15,500.09 (sic) which Defendant permitted Plaintiff to retain and Defendant is entitled to have credited to it against the amount due from Defendant to Plaintiff, to wit: $71,359.76, the aforesaid sum leaving a balance due from Defendant to Plaintiff of the sum of $56,309.66 on account of the aforesaid policy and loss." [Finding VIII.]

7. "That Defendant promptly tendered to Plaintiff upon the ascertainment of said amount and prior to the commencement of this action the said sum of $56,309.66 and has continued its said tender." [Finding IX.]

8. "Mr. Davis: * * * but you will stipulate that the tender was made. * * *

Tender was made as alleged in my answer.
"Mr. Sheppard: In the amount of money that was tendered but not for the full amount." [Tr. p. 452.]

9. "That defendant is entitled to have credited to it, its proportion of said salvage return being 132,000/346,442.60 of $39,500 or $15,050.09, leaving a net due from defendant to plaintiff of the sum of $56,309.67, which sum defendant tendered to plaintiff prior to the commencement of this action, and again tenders the same to plaintiff and will keep such tender good." [Defendant's answer to first cause of action, VI, Tr. p. 15.]

10. "As to the allegations of Paragraph VIII of said Second Cause of Action, defendant admits that it has not paid the sum of $100,000 or any part thereof to plaintiff, but denies there is now or was due or owing the sum of $70,366.88 or any other or greater sum than the sum of $36,223.66, which sum defendant, prior to the commencement of this action, tendered to plaintiff." [Defendant's answer to second cause of action, III, Tr. p. 16.]

**530**

second cause of action only the defense of misrepresentation. Nor was the tender here made *conditional,* and hence the cited case of Maryland Casualty Co. v. Southern Pacific Co., 9 Cir., 1942, 119 F.2d 672, is inapplicable.

The law of California is controlling (Concordia Ins. Co. of Milwaukee v. School District, 1931, 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528) and is found in California Civil Code sections 1504 and 3287, California Code of Civil Procedure, § 2074, and such cases as Lineman v. Schmid, 1948, 32 Cal.2d 204, 195 P.2d 408; Happoldt v. Guardian Life Ins. Co., 1949, 90 Cal.App.2d 386, 203 P.2d 55, and, National Union Fire Ins. Co. of Pittsburgh, Pa., v. California Cotton Credit Corp., 9 Cir., 1935, 76 F.2d 279, 289.

The judgment of the District Court is affirmed.